Bartholomew, Appellant, vs. Thieding and others, Defendants: Fensenmaier, Respondent.

*April 28—May 25, 1937.*

For the appellant there was a brief by *W. H. Stafford, Harold E. Stafford,* and *Marshall Norseng,* all of Chippewa Falls, and oral argument by *Mr. Norseng.*

For the respondent the cause was submitted on the brief of *G. Erle Ingram* and *Karl W. Filter,* both of Eau Claire.

ROSENBERRY, C. J. The question presented is whether or not the memorandum upon the note of December 2, 1935, was, as the trial court found, an assignment *pro tanto* of the insurance money to become due to the plaintiff, Bessie Bartholomew. One of the leading cases upon equitable assignment is *Christmas v. Russell* (1871), 14 Wall. 69, 20 L. Ed. 762. In that case it was held that an agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; that to constitute an equitable assignment the transfer must be of such a character that the fundholder can safely pay the assignee and is compellable to do so, although forbidden by the assignor. In the annotations of this case to be found in Rose's Notes are many cases illustrative of this principle. See *Crook v. First National Bank of Baraboo* (1892), 83 Wis. 31, 52 N. W. 1131; *B. Kuppenheimer & Co. v. Mornin* (C. C. A. 1935), 78 Fed. (2d) 261, 101 A. L. R. 75, and cases cited in note.

It is clear under the doctrine of these cases that there was no equitable assignment of the fund in question. Fensenmaier, however, seeks to sustain the judgment on the ground that, if the memorandum is not sufficient as an assignment, it operated to create an equitable lien upon the fund under the circumstances of this case. It is true, as Fensenmaier contends, that equitable liens arise from written contracts

showing an intention to charge some particular property with the payment of a debt. The question in this case is, Is such intention established by the proof? In addition to the language of the memorandum already set out Fensenmaier testified upon the trial as follows:

"*Q*. Well did you have any definite understanding as to the payment of this insurance if she should get it? *A*. Well, not being positive as to whether she would be made beneficiary or not, she said if she was made beneficiary she would pay for the funeral out of the insurance money, but not being certain she said she wanted to make arrangements so that it could be paid on monthly instalments."

The memorandum amplified by the testimony of Fensenmaier does no more than to show a promise on the part of Mrs. Bartholomew that the money when received was to be paid to Fensenmaier. There was no attempted assignment. She gave no order upon the fund. She gave no authority to Fensenmaier to receive payment from the insurance company. She merely promised that, if made a beneficiary and she received the money, she would pay for the funeral out of it. While the equities of Fensenmaier in this case are very strong and compelling, we are unable to discover in this transaction any evidence of an intent to charge the fund.

The doctrine of equitable liens is a very liberal and generous one and is not restricted by the application of the ordinary rules of law. The most typical case of an equitable lien is the so-called purchase-money lien. There are many other examples, as where one through his efforts in whole or in part produces the fund in question, as where an attorney or an accountant renders services which result in the production of the fund. None of these circumstances exist in this case. It would be a rather startling proposition if it were held that a customer going to a bank and representing to the bank that he had money coming due in a few days, and that if the loan were made he would repay the loan out

of the proceeds, a lien upon the fund was created in favor of the bank. That is an everyday transaction. It is quite probable that, unless confidence has already been thoroughly established between the bank and a customer, inquiries would be made by the bank as to how the loan would be repaid and what the resources of the person loaning were. We can see no difference between these transactions and the one under consideration. There is an entire lack in this case of any evidence of appropriation or any effort to appropriate the fund to the payment of the obligation. If Mrs. Bartholomew had authorized Fensenmaier to collect the money, the situation would be quite different, especially if he had the fund in his possession pursuant to the authorization. There was nothing in this transaction which prevented Mrs. Bartholomew from giving complete discharge of the obligation of the insurance company under the policy. It is true in this case the fund was paid into court, and the question of whether or not a creditor can split the debtor's obligation does not arise under the circumstances of this case. It is also true that the court has power to do equity but, in doing it, it must base its action upon some right asserted by one party against another.

It is considered in this case that no such right appears. Mrs. Bartholomew merely failed to keep her promise. It does not place her in a very pleasant light to compel Fensenmaier to bear the expense of the burial of her daughter, but that does not operate to change the legal and equitable principles applicable. For review of authorities see the following cases: *Board of Com'rs of Okfuskee County v. Hazelwood* (1920), 79 Okla. 185, 192 Pac. 217, 11 A. L. R. 709; *Jones v. Carpenter* (1925), 90 Fla. 407, 106 So. 127, 43 A. L. R. 1409; *Geddes v. Reeves Coal & Dock Co.* (C. C. A. 1927) 20 Fed. (2d) 48, 54 A. L. R. 282.

*By the Court.*—That part of the judgment appealed from is reversed, with directions to dismiss the petition of Fensenmaier.