**In the Matter of Ralph E. Stolkin, Debtor.**

**Ralph E. STOLKIN, Appellant,**

v.

**Norman H. NACHMAN, et al., Appellees.**

**Ralph E. STOLKIN, Appellant,**

v.

**Joseph H. SCHWARTZ and Malcolm M. Gaynor, Appellees.**

**Nos. 71–1406, 71–1407.**

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1972.

Decided Jan. 18, 1973.

---

2. 28 USCA, § 2106:

James M. Shellow, Stephen M. Glynn, Milwaukee, Wis., for appellant.

Nicholas G. Manos, Leonard Gesas, Norman H. Nachman, Ira S. Kolb, Lloyd Kupferberg, Robert Dunn Glick, Chicago, Ill., for appellees.

Before DUFFY, Senior Circuit Judge, PELL, Circuit Judge, and DURFEE, Senior Judge *.

PELL, Circuit Judge.

These appeals[1] are from orders of the district court entered on March 3 and

---

\* Senior Judge James R. Durfee of the United States Court of Claims is sitting by designation.

1. These appeals were consolidated for a hearing with Cause No. 71–1095, also an appeal by Stolkin, the debtor, concerning the allowance of a claim to his former wife.

April 20, 1971, confirming the awarding of fees in Chapter XI proceedings of the Bankruptcy Act to Norman H. Nachman, as attorney for Ralph E. Stolkin, debtor; to Craig Phelps, receiver, and Nicholas G. Manos, the attorney for the receiver; and to J. H. Schwartz and Malcolm M. Gaynor, as attorneys for the official creditors' committee. Although one significant issue concerns all of the fee allowance recipients, separate issues are presented as to various appellees or groups of appellees. We therefore first turn to the matter presented as to Nachman.

Although not regularly employed in the ordinary sense of that word, Ralph E. Stolkin, as an investor, by the middle 1960's had become the possessor of a substantial quantity of worldly goods. His gross receipts during the year 1966 were in excess of $9,600,000. In addition to such indicia of wealth as automobiles, objects of art, residences, and oil property investments, Stolkin owned substantial blocks of stock in National Video Corporation (NVC) and MPI Industries, Inc. (MPI). Apparently unable to live within his income, Stolkin experienced pressure in 1965 and 1966 for liquidation of ever-increasing indebtedness. Liens and high interest obligations, levies and litigation followed. Stolkin's shares of NVC and MPI were held as collateral by Bankers Life & Casualty Co. (Bankers) which was threatening to liquidate the collateral. A minacious foreclosure sale was postponed upon assurances from Stolkin that he was obtaining immediate refinancing. Upon his failing to carry out his promise, Bankers rescheduled a foreclosure sale for August 7, 1968.

Nachman was retained in June 1968 to assist in the financial problems. The foreclosure sale being imminent, and with very little time for studied action, Nachman instituted on behalf of Stolkin Chapter XI arrangement proceedings so as to enable Stolkin to obtain a reasonable period of time to refinance his loan and pay his creditors in full. The foreclosure sale was enjoined over objections.

Stolkin, as of August 6, 1968, owed taxes in excess of $2,000,000, secured debts of approximately $14,000,000, and unsecured debts of approximately $500,000. Also there was a claim for $1,200,000 filed by Syracuse University and other smaller claims.

Stolkin's affairs were intricate and snarled, debtors continued to press through the bankruptcy court, and Nachman, who had filed the petition for an arrangement, continued to represent Stolkin as debtor in possession. Claims were compromised and it is not unfair to say that there is substantial supportive evidence for Nachman's claim that he rendered yeoman service for a debtor whose proclivities for indebtedness and wheeling and dealing made the attorney's services not easy of rendition.

By 1969, NVC having become without particular value, arrangements were made for the merger of MPI with DeSoto, Inc. Bankers was concerned because of the fluctuations in the stock values as emphasized by the filing of Chapter X proceedings by NVC within three weeks after its stock was traded at $16 per share. Objection was made to Stolkin speculating with the Bankers' collateral to increase his personal wealth. Nevertheless, the details of the merger were finally worked out to everyone's apparent satisfaction. In October 1969, the referee ordered the sale of the stock resulting from the merger. The relationship became strained between Nachman and Stolkin about this time because of Nachman's insistence that Stolkin obey the agreed order to sell and Stolkin's disinclination to do so.

Interim fees were paid pursuant to an order of the referee in late December 1969 of $150,000 to Nachman and $60,000 to Schwartz. Stolkin or no one on his behalf objected to the payment of the interim fees, which Stolkin deducted from his 1969 income taxes, until the appellant's brief in the present appeals. Relationships between Nachman and Stolkin worsened when in August 1970

Nachman refused to sign a revised petition for reconsideration of the allowance of Stolkin's former wife's claim, the subject of appeal No. 71–1095. In October 1970 Nachman attempted to withdraw but was not permitted to do so by the referee. Eventually a receiver was appointed.

In mid-1970 following a hearing, counsel for a group of creditors presented a motion to disqualify the referee who had been handling the matter until that time. This motion was granted by the district court and proceedings were transferred to Referee Tieken in July 1970. Although Nachman had not been permitted to withdraw, other attorneys also appeared for Stolkin during the last six months of 1970 and thereafter.

The telling of the complete tale of these complex proceedings would take many pages without particularly bringing us to a point of decision. It is sufficient to say that the upshot was that all of Stolkin's creditors were paid in full and Stolkin was revested with title to assets estimated at close to $10,000,000.

As is customary in proceedings of this type, upon completion of services, claims were filed for fees. On January 18, 1971, the referee entered an order for payment of fees. Nachman's claim was $625,000, which the referee allowed in the amount of $500,000 from which was to be deducted a $15,000 retainer origi-

nally paid by Stolkin to Nachman and the $150,000 interim fees. Phelps claimed $56,000 and was awarded $53,000. Manos claimed $60,000 and was awarded $57,000. Schwartz and Gaynor claimed $250,000 total fees and were allowed $200,000 less $60,000 interim fees.

Although there were general objections to the allowance of fees at the time the matter was under consideration, Stolkin for the first time on this appeal raises a question which challenges the payment of any fees whatsoever to Nachman. A similar question was raised as to the fees allowed Manos.

The basis for the contention with regard to Nachman is that there was no compliance whatsoever with General Order in Bankruptcy 44 and Rule 13 of the Bankruptcy Rules of the United States District Court for the Northern District of Illinois.[2]

Nachman, a highly respected practitioner at the bankruptcy bar, does not contend that there was compliance with General Order 44 and Rule 13 but candidly admits that because of the shortness of time (five days) in which a decision had to be made as to how to head off the Bankers' foreclosure sale and to realize a *fait accompli* in this respect, the detail required by General Order 44 and Rule 13 was overlooked. Overlooking this order is not of insignificant consequence. The drastic ef-

---

2. General Order 44, in pertinent part, provides:
   "No attorney for a . . . debtor-in-possession shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the . . . debtor-in-possession, stating the name of the counsel whom he wishes to employ, the reason for his selection, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the . . . debtor, the creditors or any other party in interest and their respective attorneys. If satisfied that the attorney represents no interest adverse to the . . . estate in the matter upon which he is to be

engaged, and that his employment would be in the best interests of the estate, the court may authorize his employment, and such employment shall be for specific purposes unless the court is satisfied that the case is one justifying a general retainer."
   Rule 13A, in pertinent part, provides:
   "No . . . debtor-in-possession shall employ an attorney at the expense of the estate without prior approval by the Referee upon a petition which shall comply with General Order 44 and contain a full statement of the facts which make employment of counsel necessary and indicate the estimated probable expense and financial benefit to the estate. The showing of necessity for a special or general retainer shall be factual."

fects of noncompliance with General Order 44 is related in Albers v. Dickinson, 127 F.2d 957, 961 (8th Cir. 1942):

> "Without a full compliance with these [General Order 44's] requirements, the trustee has no right to make any payments of attorney's fees out of the bankrupt estate; the referee is without authority to approve any payments which the trustee has thus made; and no attorney can legally receive or retain any such payments out of the estate for services which he may have rendered."

*See also* In re Calpa Products Company, 411 F.2d 1373, 1374 (3d Cir. 1969); In re Hydrocarbon Chemicals, Inc., 411 F.2d 203, 206 (3d Cir. 1969) (en banc), cert. denied, Neiwirth v. Hydrocarbon Chemicals, 396 U.S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74.

In the case of In re Rogers-Pyatt Shellac Co., 51 F.2d 988 (2d Cir. 1931), the court considered the argument that to impose such a drastic rule would work an undue hardship and that the attorney's appointment should be retroactively effected by a nunc pro tunc order:

> "The only argument in favor of a nunc pro tunc order is that of hardship. But the hardship is of the appellants' own making. The rule is clear, and they are charged with knowledge of it. To give heed to the argument of hardship in such circumstances would nullify the requirement that the affidavit be filed before the appointment is made." 51 F.2d at 992.

■ If Stolkin had raised the present question in an initial complaint to the referee or perhaps even to the district court, the question of whether the requirements of General Order 44 and Rule 13 would prevail over the fact that obviously valuable services were rendered, which was so recognized by Stolkin himself, would indeed be a serious one. No such contention, however, with regard to General Order 44 or Rule 13 was ever presented either to the referee · or to the district court. This brings the contention into confrontation with the generally accepted principle that any error not presented below will be lost on appeal. In re Ben Weiss Co., 271 F.2d 234 (7th Cir. 1959); 2 Collier on Bankruptcy (14th ed. 1971) ¶ 25.22.

■ Stolkin argues that "[i]n a sense, then, this requirement is jurisdictional insofar as it precludes payment to attorneys who have not followed its strict mandate." We have been furnished no authority, however, on this precise factual situation to the effect that the matter is jurisdictional. We do not conceive that it is desirable to disregard the equitable aspects of bankruptcy proceedings for the purpose of merely adhering to ritualistic words without any regard to the spirit or rationale of General Order 44.

In evaluating the equitable aspects of the matter here involved, we are impressed by the following evident background matters. These proceedings were instituted under the imminent pressure of foreclosure proceedings which would have been disastrous financially to Stolkin. There is no hint that if the petition required by General Order No. 44 had been prepared it would have been subject to any challenge. There is no showing that Nachman represented any interest adverse to the estate or to the debtor-in-possession. There was no receiver during the main part of the proceedings and there was never a trustee. Stolkin himself conceded that the employment would be to the best interest of the estate, in fact had retained Nachman and had paid a $15,000 retainer fee. A look at the debtor's financial picture would have clearly justified a general retainer in the proceedings, and the necessity for employing counsel on this basis was obvious. It was clear, at all times to the referee that Nachman was Stolkin's attorney, and that Stolkin, the debtor-in-possession, was highly appreciative of the legal work until Nachman imposed some of his own ethical standards upon Stolkin. A reading of General Order 44

indicates that its rationale is for the protection of creditors, a prime concern in any bankruptcy proceeding. Here every creditor has been paid in full and a substantial amount has been left for the debtor. This is not a case of a creditor complaining about noncompliance with General Order 44 but that of the debtor himself who retained the attorney initially and throughout and who would be the only one to profit if the fees were completely disallowed. Interim fees were allowed but Stolkin did not conceive the necessity of hiring another counsel to oppose these nor indeed did he object to them until his appeal.

Certainly from the record the original referee and his successor proceeded in dealing with Nachman as though there had been no question of compliance with General Order 44.

If we were to take the position that Nachman was blocked from any claim for compensation for his services in these far from easy proceedings, we would have a formalistic but meaningless adherence to the General Order 44 and would be ignoring the words of the Supreme Court in Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966):

> "Yet we do not read these statutory words [of the Bankruptcy Act] with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction."

■ The contention directed towards Manos takes a different twist but is also based on General Order 44 and Local Rule 13. As we view it, it is merely another manifestation of Stolkin's belated efforts, now that the Chapter XI proceedings have been completed, to avoid payment of appropriate and proper fees. A petition for appointment was filed in the case of Manos. However, the objections are made that it was not verified and that it did not advise the referee that Manos had represented a secured creditor "at an earlier stage of the proceedings." Further, it did not indicate what estimated probable expense and financial benefits to the estate would accrue as a result of the attorney's appointment and it did not provide the factual showing of the necessity for a general retainer. Again, we find it difficult to conceive that the referee felt any necessity for the recital of the obvious. This contention with regard to Manos was also raised for the first time on appeal and we find it without merit.

The next point on these appeals is applicable to all of the appellees. Petitions for fees were filed by the appellees in late December 1970. The applications, together with their supporting statements, totaled approximately 350 pages and represented a total request for $991,000. Attorney Max Wildman entered his appearance as special counsel the next day only for the purpose of representing Stolkin on the application for allowance of fees. Wildman stated to the referee that the debtor had been represented by competent counsel "and they have put in a great deal of effort in this case." He said, however, he would like an opportunity to view the applications, and the matter was continued for one week, which of course included the Christmas holiday. The matter came up again on December 30. Wildman indicated that he would need additional time and that he would object. In response to the referee's question, he stated that he did not have any idea by how much they were excessive. The referee indicated that he had made a study of the requests, was ready to pass on them, and that there would be a substantial savings. This, he said, is the reason he asked what figures the attorney had in mind. Upon request, the matter was continued to January 11. On that date a member of Wildman's law firm informed the court that Wildman was in a trial. Stolkin's California counsel, Norman Mitchelson, was allowed to present the argument on fees. Mitchelson requested that the court grant a continuance of 30 to 45 days to allow Stolkin's counsel an opportunity to initiate discovery procedures. The referee stated that unless

Mitchelson could offer something to show that there was "bad faith or that these men had padded their requests" he was not going to grant any time for discovery, "[b]ecause I can't see what particle of good it can do."

The referee, taking the position that Mitchelson was sufficiently familiar with the case to proceed to argument, refused to grant him a continuance for the purpose of discovery. After hearing argument, the referee entered his order a week later.

A petition for review of the fees was filed in the district court and shortly thereafter the present attorney for Stolkin entered his appearance. There were several continuances in the district court. During this time, the new counsel served subpoenas duces tecum upon the appellees and others to require their presence together with certain documents and records for examination at the scheduled hearing. On the day the subpoenas were filed, the district court excused those subpoenaed from producing the records and eventually quashed the subpoenas. While the district court on March 3, 1971, entered an order confirming the allowance to Nachman, Phelps, and Manos, it referred the petition of Schwartz and Gaynor back for determination of a matter raised during the hearing before the district court, which matter will be discussed hereinafter. Insofar as the present point is concerned, however, discovery was not permitted as to any of the fee claimants. Eventually, the Schwartz and Gaynor fees, as modified by the referee on referral to him, were confirmed by the district court.

■ We have no occasion to consider the correctness of the district court's order since we have arrived at the opinion that the referee incorrectly denied the continuance when the matter was originally before him with the request for an opportunity to initiate discovery proceedings.

■ The allowance or disallowance of fees in bankruptcy matters normally involves an exercise of sound discretion by the bankruptcy court and is one that this court is loath to disturb. In re Schumaker Construction, Inc., 346 F.2d 353, 356 (7th Cir. 1965); In re Hamilton Distributors, Inc., 440 F.2d 1178 (7th Cir. 1971).

We are not here, however, directly concerned with a determination of whether the fees were excessive but are rather concerned with procedural matters leading up to the determination of the fees. We recognize that the fees involved are substantial, but there is reason for the referee to have thought that the services were correspondingly substantial. Clearly substantial assets were involved. We nevertheless express no opinion as to whether the specific amounts of the fees were proper.

The appellees have argued in various ways that discovery is inappropriate in fee petition proceedings. In our opinion, a fair reading of the General Orders requires a contrary result. General Order 37, applicable to Chapter XI proceedings, makes the Federal Rules of Civil Procedure applicable to proceedings under the Bankruptcy Act "in so far as they are not inconsistent with the Act or with these general orders. . . ." We have been presented no persuasive reason as to why an individual being sued by his attorney for fees in a federal court diversity action should have any greater rights to discovery than the debtor in Chapter XI proceedings who wishes to contest the allowance of fees. Rule 41, Fed.R.Civ.P., was held applicable to proceedings before a referee which were of a judicial character. Stern v. Barnett, 452 F.2d 211 (7th Cir. 1971).

■ Reference is often made to the fact that a referee has intimate knowledge of the work performed by receivers, trustees, attorneys, etc. In the present case, we note that the bulk of the proceedings took place before Referee Schaefer and it was not until July 14, 1970, only six months before the hearing on the fees, that the case was transferred to Referee Tieken. Since we find no countervailing considera-

tions, we hold that the portions of the Federal Rules of Civil Procedure relating to discovery are generally applicable to fee allowance proceedings. Any need to tailor individual rules to the nature of the proceedings, we leave to the sound discretion of the referee and district court.

While there are substantial indicia which could raise a question of Stolkin's good faith at several points in these bankruptcy proceedings, we are not necessarily persuaded that the challenge to the fees was in bad faith. It is our opinion that the request for continuance for the purpose of initiating discovery relating to whether or not the fees were in fact excessive should not have been denied. This is particularly true in view of the substantial amount of the fees. Therefore, it is our holding that the denial was an abuse of discretion.

On remand, a reasonable opportunity for examination of the basis of the fees and a reasonable opportunity for discovery should be afforded. This does not mean that the ordinary requirements of expedition in bankruptcy proceedings should be ignored, and counsel for Stolkin may expect that the proceedings will have to move at an expedited pace.

One final contention is to be noted with regard to the claim of Schwartz and Gaynor for fees. At the February 26 hearing it was demonstrated that the itemized hourly account of Schwartz and Gaynor contained an overstatement of 1000 hours.[3] They had claimed 3,172 hours but it was shown that 2,172 had actually been itemized. The matter was referred back to the referee, who, two days after the referral, reduced the award by $25,000. We express no opinion whether the overstatement of 1,000 hours out of a total of 3,172 hours would have required a reduction of more than $25,000 from a total award of $200,000. We do note, of course, the disparity, but

since the entire matter of Gaynor's and Schwartz's fees will be subject to review on the remand, we assume that the matter will be appropriately considered upon the remand.

We also note that Stolkin's behavior throughout much of these proceedings may have contributed to more than usual time and more than usual responsibility being involved. To the extent that it should develop that Stolkin's own behavior contributed to increased fees and expenses, he cannot be heard to complain. The Chapter XI arrangement is not to be undertaken as a sport and the debtor has responsibility which if fulfilled makes the completion of the arrangement significantly easier. That was not always the case herein.

For the reasons hereinbefore set out, the judgments of the district court are reversed and the cause is remanded to be referred to the referee for further proceedings consistent with this opinion. Each of the parties shall bear his own costs.

Reversed and remanded.

---

3. It would appear that the 1000 hour overstatement resulted from nothing more complex than a mistake in addition. The failure of the referee to note this on

the occasion of the original allowance of fees is suggestive at least that the scrutiny of claims was somewhat less than meticulous.