In the Matter of RICHLAND BUILDING SYSTEMS, INC., Debtor.

Bankruptcy No. MM7–81–01425.

United States Bankruptcy Court, W.D. Wisconsin.

June 20, 1984.

Michael E. Kepler, Madison, Wis., Trustee.

Daniel W. Stolper, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for creditor.

Richard L. Binder, Fowell & Keegan, Richland Center, Wis., for debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

This matter is before the court on a motion for approval of attorney fees arising from post-petition services rendered by the debtor's non-bankruptcy counsel. The trustee who was appointed when this case was converted from chapter 11 to chapter 7 has objected to payment for the unauthorized services performed while the debtor was in chapter 11.

The facts are not disputed. Early in 1980, prior to filing in bankruptcy, the debtor, Richland Building Systems, Inc. ("Richland"), retained the law firm of Stafford, Rosenbaum, Rieser & Hansen ("Stafford") to pursue a contract action. Richland signed a retainer agreement which authorized Stafford to proceed with litigation under an hourly fee schedule. On May 7, 1981 Stafford filed suit on Richland's behalf in Richland County Circuit Court.

Represented by other counsel, Richland filed in chapter 11 on August 19, 1981. Stafford did not learn of Richland's bankruptcy until September 21, 1981, just prior to an appearance in the state court action

to argue its motion for summary judgment. Despite an awareness that professionals retained by a debtor in possession must have bankruptcy court approval, Stafford continued to represent Richland in the state court action for a considerable time without such approval, terminating its representation only after a partial summary judgment in favor of Richland had been obtained. Under the retainer agreement the charge for Stafford's services and disbursements up to the time of Richland's filing was $1,455.90. Similarly calculated, the post-filing fees amount to $4,142.28, approximately $2,386.48 of which was incurred on and before September 21, 1981 and approximately $1,755.80 of which was incurred between that date and December 22, 1981, the last date on which Stafford provided services to Richland. Stafford contends that its withdrawal any time prior to December 22, 1981 would have seriously harmed Richland and that its unique efforts permitted Richland to obtain summary judgment on the issue of liability.

A damage award was negotiated to settlement by the trustee after his appointment on March 11, 1982. Stafford asserts that it has an equitable lien upon the settlement proceeds. The trustee objects to payment on the basis that no lien exists. The trustee further asks that if the court finds that a lien does exist, the lien be limited to those fees earned prior to the bankruptcy filing, because Stafford was never appointed as attorney for the debtor in possession as required by 11 U.S.C. § 327.

■ In bankruptcy, state law controls questions of attorney's liens. *In Re Fitterer Engineering Associates, Inc.*, 27 B.R. 878 (Bankr.E.D.Mich.1983). The leading case on attorney's liens in Wisconsin is *Wurtzinger v. Jacobs*, 33 Wis.2d 703, 148 N.W.2d 86 (1967). In *Wurtzinger*, the court recognized three types of attorney's liens. The first is the statutory lien under WIS.STAT. § 757.36. That lien requires an express grant of lien, and notice to the opposite party to preserve lien rights in settlement. The statutory lien when properly noticed is superior to the rights of other creditors in the action. Although there was a written fee agreement between Richland and Stafford, there is no specific written grant of a lien nor is there statutory notice of an intention to enforce the lien. Thus, even if the problems arising upon the filing of bankruptcy are ignored Stafford has not met the statutory requirements for a lien under WIS.STAT. § 757.36.

The second type of lien available to attorneys in Wisconsin is one on the client's papers. Stafford does not claim a retaining lien.

■ The third type of lien available to attorneys in Wisconsin is an equitable lien. In other states this is referred to as a common law attorney's charging lien and arises by operation of law upon a judgment in a contract or tort action. *Wurtzinger, supra*, at 712. Equitable liens generally arise when there is a written contract showing the intention to charge some particular property with payment of the debt for the services. *Bartholomew v. Thieding*, 225 Wis. 135, 273 N.W. 468 (1937).[1] That general statement of lien principles was ignored, however, in *Wurtzinger* where there was no showing of a written agreement between the attorney and the client regarding payment. Thus, the requirements for an attorney's equitable lien under Wisconsin law are not completely clear. The trustee in this case contends that at minimum a contingent fee arrangement either written or, if extraordinary circumstances are shown, oral, is necessary. That contention receives some support from the facts of the reported cases.

In *Wurtzinger* the Wisconsin Supreme Court does not state the nature of the parties' arrangement for payment of attorney's fees in that wrongful death action. However, many Wisconsin decisions on equitable liens rely on an agreement to charge the judgment with a lien. In *Stan-*

---

**1.** *But see* the court's broad dictum that equitable liens arise "where an attorney or an accountant renders services which result in the production of the fund"—225 Wis. at 138, 273 N.W. 468 which appears not to require a writing.

*ley v. Bouck*, 107 Wis. 225, 83 N.W. 298 (1900), the client assigned the past and future judgment to the attorney.[2] In *Courtney v. McGavock*, 23 Wis. 619 (1869), the client agreed to pay the attorney out of the proceeds of judgment, but then settled the case without the knowledge of his attorney.[3] In *Liberty v. Liberty*, 226 Wis. 136, 276 N.W. 121 (1937), the parties had a written agreement that the attorney would receive 50% of the proceeds.[4] Therefore, although the Wisconsin Supreme Court has never stated that a contingent fee agreement or other express intention to create a lien on the recovery is necessary, and has indeed suggested otherwise in *dicta*, the cases it has analyzed have contained this factor.

Nonetheless, the fact of the equitable lien's continued separate existence suggests that some purpose not served by other liens must be sought. The statutory lien already provides a means for attorneys to contract with their clients for liens on the proceeds of the action. The retaining lien allows an attorney to hold his clients' papers hostage. Additional protection for contingent fee agreements would not therefore seem necessary. The equitable lien appears more broadly to be a remedy to prevent unjust enrichment to a client whose attorney has performed well and secured a judgment. To serve such a broad purpose there is little reason to differentiate between contingency and hourly methods of calculating the fee. So long as the result achieved is directly related to the services for which the fee is sought and the result is a favorable money judgment, the basis of the fee would not have any significant impact on whether the client would be unjustly enriched at the expense of the lawyer who provided the service. Equity may thus allow a lawyer to have a lien for some or all of the services and disbursements leading to the recovery without regard to the terms of the fee agreement when such a lien is necessary to prevent unjust enrichment of the client.

Wisconsin has not directly addressed the issue of whether the equitable lien relates back to when the services were first rendered. Other states with common law attorneys charging liens have decided that the lien does relate back. *In Re TLC of Lake Wales, Inc.*, 13 B.R. 593 (Bankr.M.D. Fla.1981); *In Re Fitterer Engineering Associates, Inc.*, 27 B.R. 878 (Bankr.E.D. Mich.1983), *cf.* 7 Am.Jur.2d *Attorneys at Law*, § 332 (1980). This is consistent with the policy of preventing unjust enrichment. It would be inequitable to allow a debtor to use an attorney's services to create a specific fund and then defeat payment by filing bankruptcy before judgment. The soundness of permitting the law firm to reach back in time has not been actively disputed here.

■ How far forward the fees in this case ought to be protected by the lien is a more difficult question. Stafford asserts that their equitable lien should extend to services rendered after Richland filed bankruptcy. However, the services performed after the filing were performed for the estate, not the debtor, and the retainer agreement Stafford had with Richland, unless properly assumed, would not bind the estate to accept any professional services. However, if the debtor in possession or the trustee had sought and received either the

---

2. But significantly, the Wisconsin Supreme Court stated in this opinion that, apart from the statutory lien, "when judgment has been recovered in an action, whether in contract or tort, the rule is well established that the attorney has an equitable lien thereon, by operation of law, for his services and disbursements in that action." 107 Wis. at 230, 83 N.W. 298. Such a lien "whether resting upon agreement or raised by operation of law, is complete without notice to the opposite party." *Id.* at 231, 83 N.W. 298 (dicta). Research does not disclose any later opinion overruling this view.

3. Here the lien failed because defendant must have notice for lien to attach to settlement proceeds. 23 Wis. at 622–623 (ruling now enacted as statute, WIS.STAT. §§ 757.36, 757.37).

4. *But cf.* the court's broad dictum that "[a]n attorney has a lien by operation of law upon a judgment obtained by his efforts to the extent of the value of his services and his expenses and disbursements." 226 Wis. at 139, 276 N.W. 121.

assumption of the agreement between Richland and Stafford or the appointment of Stafford as special counsel under 11 U.S.C. § 327(e), the fee incurred after the appointment clearly could be charged to the estate as an administrative expense.

Section 327 allows the court to assess the competency and experience of an attorney. It also provides an opportunity to evaluate the necessity of the services which the attorney is to perform. Both of these evaluations can be performed with equal or greater accuracy after the services have been performed. But that acknowledgment does not suggest that evils sought to be avoided by prior approval of professional services contracts should be readily ignored, or that a professional by rendering services to a trustee or debtor in possession can unilaterally bind an unwilling client. In this case the willingness of Richland to continue to retain Stafford arose prior to Mr. Kepler's appointment as trustee and may have been demonstrated as early as the first time that Stafford was allowed to proceed after it had requested of Richland but did not receive a motion for appointment. The success of the further proceedings led directly to the production of the settlement payment which the trustee was later able to negotiate and therefore is the basis for an equitable lien. But the common law right to enforce a lien does not provide a license to avoid approval of professional services by this court.

It has been argued that the necessary approval can be granted after the fact. Specifically it is argued that in the Seventh Circuit a bankruptcy court in certain circumstances, if the requirements of 11 U.S.C. § 327(c) are met, may make such an order appointing special counsel *nunc pro tunc* to the date on which the case was filed. *Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973). *See also In Re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir. 1983). Both *Stolkin* and *Triangle Chemicals, Inc.* involve cases where the attorney served the debtor in preparation for bankruptcy as well as the other matters for which payment was sought. But in the present case Richland had separate bankruptcy counsel who waited more than one month after filing to advise Stafford that their joint client was in chapter 11. That delay may have provided tacit approval by Richland's bankruptcy counsel to Stafford's representation on the summary judgment motion, but once Stafford knew of the bankruptcy filing it was also aware that court approval of its further representation was necessary. Stafford initiated efforts to convince the bankruptcy counsel to prepare and file a motion for that approval, and continued to serve when those efforts proved fruitless.

The present case is materially different from both *Stolkin* and *Triangle Chemicals, Inc.* in other respects as well. Unlike the lawyer in *Triangle Chemicals, Inc.*, Stafford was aware of the necessity of court approval for its continued service after September 21, 1981. Unlike *Stolkin*, there is no evidence that the trustee in this case is merely trying to avoid paying for services rendered to him in good faith. Because the trustee was not yet appointed when the unauthorized services were rendered, he was not in a position to condone the representation and then refuse to pay for it. His objection to the fee now is a technical objection to the allowance of claim in the prior chapter 11 due to Stafford's failure to obtain proper appointment by the bankruptcy court. There is no suggestion that Stafford's representation was not in Richland's best interest. Certainly a favorable result was obtained. But this court cannot find that Stafford's continued representation without court approval was made necessary by an emergency or by the nature of the state court's procedures. Stafford chose to proceed with its representation and not press for court appointment aware of the risk it was taking. The circumstances did not justify that action.

Thus, although there is no reason to doubt either the quality of the services provided by Stafford or the good faith with which they were provided, the firm's awareness that after September 21, 1981, it performed services to the estate without authority is sufficient to preclude the

court's approval of those fees retroactively. The claim of Stafford shall therefore be allowed in the amount of $3,842.38 calculated on the basis of fees earned and expenses incurred prior to September 22, 1981, and denied as to amounts earned or incurred thereafter. That allowed claim shall be charged as a lien upon the proceeds of settlement held by the trustee. Judgment may be entered accordingly.