**In re CHAMBERLIN CORPORATION, Debtor.**

**Bankruptcy No. 84–2861.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 8, 1985.

Shirley C. Arcuri, Tampa, Fla., for debtor William Greenawalt.

Harley Riedel, Tampa, Fla., for Ingersoll-Rand Financial Corp.

ORDER ON APPLICATION FOR ORDER UNDER 11 U.S.C. § 327 TO AUTHORIZE EMPLOYMENT AS ATTORNEYS OR SPECIAL COUNSEL FOR DEBTOR NUNC PRO TUNC AND FOR PAYMENT OF FEES

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Application for an Order Authorizing the Employment as Attorney or as Special Counsel for Chamberlin Corporation, the Debtor involved in the above-captioned Chapter 11 case. The Application also seeks an Order to determine the fee to be allowed to counsel should the employment be authorized. Unlike, as it appears ordinarily in a case, this Application for the Employment was not filed by Chamberlin Corporation, the Debtor, but filed by William Greenawalt, Esquire (Greenawalt) on his own behalf. The Application is objected to by the Debtor and by the largest creditor of the Debt-

or, Ingersoll-Rand Financial Corporation (IRFC). The Court having considered the entire record, the briefs submitted by counsel and all the facts which are relevant to the resolution of the controversy as appears from the record now finds and concludes as follows:

Chamberlin Corporation (the Debtor) is a Florida corporation and was engaged in manufacturing and in the distribution of pharmaceutical and allied items. At the time relevant the Debtor maintained its headquarters in Largo, Florida. The Debtor is a wholly owned subsidiary of a New York corporation known as Chamberlin Parental Corporation (CPC). Dr. Chamberlin is the principal officer and chief executive of the Debtor who maintains his residence in Connecticut. The manufacturing plant occupied by the Debtor is owned by Dr. Chamberlin individually. At the commencement of this Chapter 11 case, the Debtor was already indebted to Ingersoll-Rand Financial Corporation (IRFC) in the principal amount of $2,250,000, which amount was secured not only by a mortgage on Chamberlin's personal residence located in Connecticut but also by a third mortgage on the Largo plant and also on practically all the assets of the Debtor, including all of its inventory, raw materials, finished goods, work in progress, accounts receivables, fixtures and equipment. In addition, the indebtedness was also secured by all of the assets of Chamberlin Parental Corporation (CPC) who, as noted earlier, was the parent of the Debtor. CPC is not involved as far as it appears from this record in any insolvency proceeding under any of the operating chapters of the Bankruptcy Code. Dr. Chamberlin has personally guaranteed all the Debtor's obligations and including the obligation owed to IRFC. At the commencement of the Chapter 11 case, the Debtor was already heavily in default on its obligation to IRFC. In order to maintain the operation of the business and preserve the going concern value of the Debtor, IRFC extended additional loans post-petition which were also, of course, secured by all newly acquired assets and this Court authorized the Debt-

or to grant a security interest to IRFC to secure all the post-petition advances by all receivables generated post-petition.

Any efforts to revitalize the Debtor appeared to be hopeless and, therefore, all efforts were concentrated toward liquidating the assets of the Debtor. These efforts culminated in the sale ultimately approved by this Court under an agreement with IRFC that all the collateral of IRFC was sold with the proviso that with the exception of $50,000 withheld from the purchase price which was to be used to defray the cost of administration and possibly pay a small dividend to general unsecured creditors, the remaining funds shall be turned over to IRFC immediately in partial satisfaction of its claim. The sale was ultimately consumated and the funds are currently held in escrow pending the resolution of this present controversy presented for this Court's consideration by the Application filed by Mr. Greenawalt. This leaves for consideration the facts relevant to the resolution of Mr. Greenawalt's Application.

Prior to the filing of the Involuntary Chapter 11 Petition in this case, Dr. Chamberlin employed Mr. Greenawalt, an attorney licensed to practice law in New York, to represent the Debtor, CPC and himself individually. The Involuntary Petition was not contested and on January 19, 1985 an Order for Relief was entered in this case. It is Greenawalt's position that he was employed by the President of the Debtor to represent the Debtor in this bankruptcy case, although the Debtor never sought this Court's permission to hire Greenawalt, but rather, sought and obtained approval for the employment of the law firm of Straske, Farfante, Segal and Arcuri. It should be noted that Greenawalt is not a member of the Florida Bar, is not admitted to practice law in the Middle District of Florida and failed to seek and obtain an order authorizing his appearance in this case even *pro hoc vice*. It is without dispute that all parties of interest and also this Court were aware of Mr. Greenawalt's involvement in this case, and, in fact Mr. Greenawalt has at various hearings held

since the commencement of this case, stated in open court that he represented the Debtor.

Mr. Greenawalt is not a specialist in the area of bankruptcy law and has never represented a Debtor-in-Possession under Chapter 11 in any prior judicial proceeding. He has stated that his field of expertise is in the general commercial area.

Based upon the foregoing facts Mr. Greenawalt seeks an order from this Court authorizing his employment as attorney for the Debtor nunc pro tunc. In support of his position, Mr. Greenawalt relies on *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 5th Cir. (1983); *In the Matter of Laurent Watch Company, Inc.*, 539 F.2d 1231 (1976) and *Stolkin v. Nachman*, 472 F.2d 222 (2d Cir.,1971). While this Court agrees with the general propositions for which these cases stand, it finds that the facts presented by this particular case do not warrant the approval of Mr. Greenawalt's application because the facts involved in these cases are distinguishable from those involved in this case.

The *Triangle Chemicals* case was commenced under Chapter 11 of the Bankruptcy Code. During the pendency of the Chapter 11 proceeding the attorney performed substantial work on behalf of the Debtors although his employment was never authorized by the Court. The attorney then filed his request for nunc pro tunc approval of his employment. Although there were no objections, the Bankruptcy Court denied the Application and the attorney then appealed to the Fifth Circuit. While the appeal was pending the case was converted to Chapter 7 and the Chapter 7 trustee thereupon appeared before the Fifth Circuit to oppose the Application. As stated above, neither the Debtor or any creditor objected to the entry of an order authorizing the employment nunc pro tunc. The Fifth Circuit held:

"We thus find that neither bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its sound discretion and as a court of equity administering equitable principles, from entering an order nunc pro tunc authorizing the employment of an attorney for the debtor-in-possession, even after the attorney (who should have secured prior approval of his retainer) has performed valuable services for the debtor's estate they have increased the common funds available for distribution to the creditors.

*In re Triangle Chemicals, Inc.*, supra, at 1289, the Court went on to state:

We do not intend to intimate whether, on remand, he should or should not exercise that discretion. Further, the bankruptcy statute and rules require court approval for employment of an attorney for the debtor's estate and contemplate that such approval will be required in advance of such employment and only after the showing now required by statute (see note 2 supra). While equitable powers may permit nunc pro tunc appointment in rare or exceptional circumstances, we do not intend by our holding to encourage any general non-observance of the contemplated pre-employment court approval."

■ This Court is in agreement with the general proposition approved by these cases that in exceptional circumstances, the Court may consider the Application filed by the professional itself and not by the Debtor. However, neither Laurent Watch Company, supra, nor Stolin, supra, furnish persuasive support for the contention advanced by Greenawalt in the present instance. *Laurent Watch* merely restated the proposition that the Court has the power to issue nunc pro tunc orders and *Stolkin* involved employment and compensation of counsel who was not formally appointed and who represented no conflict to the estate and in which case no one objected. While in *Stolkin* the Debtor objected to the nunc pro tunc approval, the Debtor conceded that the attorney's efforts were in the best interest of the estate, it was clear that the attorney represented the Debtor all through the proceeding and, in fact, the Debtor was very appreciative of that work. Moreover, which is most important in *Stolkin* all creditors were paid in full and the

Debtor appeared to be objecting only for the purpose of saving himself some surplus funds. In addition, the attorney in *Stolkin* was an experienced bankruptcy practioneer who certainly would have been approved at the beginning of the case without any question had the Debtor applied for authorization to employ counsel.

■ In the present case this is not the situation at all. In the present instance Mr. Greenawalt concedely is not familiar with bankruptcy practice and procedure; that he is not an experienced bankruptcy attorney and had the Debtor applied for his employment as counsel, this Court certainly would not have authorized the employment not only because of his inexpertise in bankruptcy but because he is not admitted to practice in this Court and never even applied for a pro hoc vice admission. Moreover, it is clear from the very outset that Mr. Greenawalt, primarily if not exclusively, represented the interest of Dr. Chamberlin individually. His efforts were basically directed toward saving Dr. Chamberlin's residence in Connecticut and also to salvage the affairs of the parental corporation in New York. This being the case it is clear that while his presence or participation might have conferred some peripheral benefits to this Debtor, it is clear that he primarily appeared and represented the interest of the individual principal, Dr. Chamberlin, not this particular Debtor. More importantly, it should be noted, as noted earlier, that the only funds are $50,000, funds which were voluntarily relinquished by Ingersoll-Rand since all monies derived by this estate were derived from liquidating the collateral of IRFC. The liquidation did not produce sufficient funds to satisfy its claim in full. Thus, the funds available on hand would be rightfully the properties of IRFC who voluntarily agreed to permit this fund to be reserved to defray cost of administration and possibly pay some small dividend to general unsecured creditors. It should also be pointed out that the Application filed by Mr. Greenawalt in the last paragraph also peripherally refers to a claim to surcharge the collateral of secured creditor, IRFC, to the extent this Court authorizes the employment and makes an allowance for Mr. Greenawalt. Of course, there is nothing in this record to substantiate that such surcharge under § 506(c) would be proper and it is clear that the efforts of Mr. Greenawalt in no way contributed to any extent, or at least not to a meaningful extent, to the preservation of the collateral of IRFC and, more importantly, did not confer any benefit to the secured creditor, IRFC. Moreover, IRFC did not consent to the employment and to any allowance of Mr. Greenawalt.

One last comment, IRFC also opposes the Application on the ground that Mr. Greenawalt had a definite conflict in this case and should not be allowed any award by virtue of § 328(c) of the Bankruptcy Code.

■ This Court is not oblivious that an attorney may represent a Debtor-in-Possession and also another interested party in order to avoid the duplication of services and waste of the assets of the estate. *In re Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160 (Bankr.D.Az.1984); *Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir.1974). However, where the interests of the parties are adverse, or even potentially adverse, as would seem to be the case, the Court should not approve the employment unless satisfied that the likelihood of an actual material conflict is slight or non-existent. In addition, had Dr. Chamberlin been forced to satisfy the obligation of the Debtor to IRFC based upon his guarantee, he would have become a creditor of the Debtor. In such situation representation of both would have been improper. *Hunter Savings Association v. Baggott Law Offices Co., P.A. (In re Georgetown of Kettering, Ltd.,)* 750 F.2d 536 (6th Cir.1984). Greenawalt states in his brief that "in the case at bar, potential conflicts may have existed but no actual conflict was present." This may well be how the case turned out, it is not however, how it would have appeared when the case was begun.

Based upon the foregoing this Court finds that the Application for nunc pro tunc approval should be denied. Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Application for Order under 11 U.S.C. §§ 327 and 330 to Authorize Employment as Attorney or Special Counsel for Debtor nunc pro tunc and For Payment of Fees filed by Halperin, Shevitz, Eisenberg, Schneider & Greenawalt be, and is hereby, denied.