**In the Matter of J.D. LYNNAN NO. 2, INC., d/b/a Mr. Steak (#406), Debtor.**

**Civ. A. No. 87–188.**

**Bankruptcy No. 81–512.**

United States District Court,
W.D. Pennsylvania.

April 14, 1987.

MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before us is an appeal by the law firm of Lampl, Sable, Makoroff & Libenson ("LSM & L")[1] of the Bankruptcy Court's denial of LSM & L's motion to be appointed counsel *nunc pro tunc* for the debtor in the above bankruptcy proceeding. We begin by reviewing the history and posture of this matter.

This case was commenced on March 3, 1981 as a Chapter 11 proceeding. During the first few months thereafter, a meeting of creditors was arranged and held, with Robert G. Sable, Esq., of the LSM & L firm serving as presiding officer. The next activity recorded on the docket occurred on March 11, 1982, when one of the unsecured creditors moved to convert the case to a Chapter 7 proceeding. The bankruptcy court held a hearing, then continued the motion pending a sale of property of the debtor, which occurred on August 25, 1982. There is no other activity recorded on the docket until December of 1984, when LSM & L applied for compensation in the amount of $5,785.00 and reimbursement for costs of $4.20. The court did not act on LSM & L's application until November, 1986, as described *infra*.

Also in December of 1984, the debtor itself petitioned the court to convert the

---

1. During the course of the bankruptcy proceeding, the firm's name was changed from Lampl, Sable & Makoroff to Lampl, Sable, Makoroff & Libenson. For simplicity, we will refer to the firm as LSM & L throughout this opinion.

case into a Chapter 7 proceeding. The court granted the petition on January 14, 1985 and, on January 17, 1985, appointed James R. Huff, Esq. as interim trustee. A meeting of creditors was held on April 11, 1985. The next activity on the docket is Mr. Huff's March 27, 1986 application to be retained as attorney *pro se nunc pro tunc* in the Chapter 7 proceeding. The court denied Mr. Huff's application, with the bankruptcy judge noting that "[n]o reason is offered for the need to hire an attorney." Mr. Huff has continued to act as Chapter 7 trustee throughout the remainder of this case, despite the court's refusal to appoint him as attorney *nunc pro tunc* as well.

On June 10, 1986, LSM & L filed a motion to compel the trustee, Mr. Huff, to file the accounting and proposed order of distribution. The court scheduled a hearing on the motion for July 30, 1986. Mr. Huff then indicated to the court that he had no objection to LSM & L's motion, and filed a proposed order of distribution and a final report and account on July 25, 1986, along with his request for compensation for his services as trustee in the amount of $473.80, and reimbursement of expenses of $76.39.

On August 29, 1986, LSM & L filed a motion asking the court to approve LSM & L as counsel *nunc pro tunc* for the debtor during both the Chapter 11 and the later Chapter 7 proceedings. LSM & L states in its brief that its motion was prompted because it was "notified for the first time [presumably by the court] that there had never been an order approving it as counsel for the Debtor." Brief in Support of Appeal of Lampl, Sable, Makoroff & Libenson at 3. The court did not act on LSM & L's motion immediately. In the meantime, Mr. Huff filed a revised final report and account and petition for compensation and a proposed revised order of distribution.

On September 23, 1986, LSM & L moved for "allowance of compensation by Counsel for the Debtor for services rendered during Chapter 7 proceedings." On November 14, 1986, the bankruptcy judge denied all of LSM & L's outstanding motions relating to appointment and compensation for services as attorney to the debtor, which at that point included (1) the December 18, 1984 motion for allowance of compensation during the Chapter 11 proceeding (however, the judge did allow LSM & L $1,500.00 for pre-petition services); (2) the August 29, 1986 motion asking that LSM & L be appointed counsel *nunc pro tunc* for both the Chapter 11 and Chapter 7 proceedings; and (3) the September 23, 1986 motion for allowance of compensation during the Chapter 7 proceeding. LSM & L then moved that the court make additional findings of fact or, in the alternative, alter and amend its judgment. The court denied the motion, and this appeal followed.

In its order denying LSM & L's last motion, the Bankruptcy Court relied on *In re Arkansas Co.*, 798 F.2d 645 (3d Cir. 1986), stating:

> This Court does not agree with the holding of *In re Arkansas Company, Inc.* I believe it is too confining; however, I am bound to follow it.

> The reasons offered in the motion to amend would meet the tests outlined in *Arkansas* except: the condition that "extraordinary circumstances" need to be alleged to justify retroactive approval. No extraordinary circumstances are alleged. A "mere showing of oversight" is not enough.

Order of December 4, 1986, Docketed at 36.

In the *Arkansas* case, the Third Circuit Court of Appeals held that bankruptcy courts do have the equitable power to authorize retroactive employment of counsel and other professionals. 798 F.2d at 648 (citing *In re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983); *In re Laurent Watch Co., Inc.*, 539 F.2d 1231 (9th Cir. 1976) (per curiam); *Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973)). However, the Court of Appeals proceeded to limit the retroactive appointment power, making clear that appointments should usually be made on a prospective basis, as provided by the 1978 Bankruptcy Code:

> We reject the notion that a complete and thorough post-application review may substitute for prior approval in most cases. This approach would render

meaningless the structure of the Bankruptcy Code and Rules which contain provisions requiring *both* prior approval of employment *and* after the fact approval of compensation. 11 U.S.C. §§ 327(a), 1103(a), 330; Bankruptcy Rules 2014(a), 2016, 2017.

*Arkansas,* 798 F.2d at 649 (emphasis in the original). The Court indicated that its *Arkansas* holding is designed to give effect to Congressional intent, citing the House Report which explained the purpose of the procedural safeguards incorporated into the 1978 Bankruptcy Code:

> It is significant that Congress chose to place the requirement of court approval for the employment of an attorney, accountant, or other professional by the creditors committee directly in the Bankruptcy Code in 1978. 11 U.S.C. § 1103(a). The legislative history makes clear that the 1978 Code was designed to eliminate the abuses and detrimental practices that had been found to prevail. Among such practices was the cronyism of the "bankruptcy ring" and attorney control of bankruptcy cases. In fact, the House Report noted that "[i]n practice ... the bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors." H.R. No. 595, 95th Cong., 2d Sess. 92 *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6053.

*Id.* The Third Circuit Court then enunciated its standard for retroactive approval of employment:

> [N]unc pro tunc approval should be limited to cases where extraordinary circumstances are present. Otherwise the bankruptcy court may be overly inclined to grant such approval influenced by claims of hardship due to work already performed. In this respect we part company with those courts that have suggested that inadvertence or oversight of counsel may constitute excusable neglect sufficient to relieve the parties of the consequences of their inaction. We

agree instead with the approach of those courts that limit the grant of retroactive approval to cases where prior approval would have been appropriate and the delay in seeking approval was due to hardship beyond the professional's control. While this may seem to be a harsh rule, a more lenient approach would reward laxity by counsel and might encourage circumvention of the statutory requirement. [citations omitted]

*Id.* at 649–50.

■ Thus, the Third Circuit Court spoke clearly and conclusively on the issue of *nunc pro tunc* employment. Attorneys for the debtor are subject to the same requirement of prior court approval as other professionals.[2] Therefore, the *Arkansas* holding, and its concern for the integrity of procedural safeguards, applies to this case. However, we are not convinced that the *Arkansas* opinion necessarily dictates the result reached by the bankruptcy court in this case.

■ The *Arkansas* opinion directed the bankruptcy judge to conduct a hearing and make findings of fact. As a preliminary matter, the court must determine whether (1) the court would have granted prior approval in light of statutory requirements; and (2) the services performed were necessary under the circumstances. Then the court must determine whether there are "extraordinary circumstances" which support the exercise of equitable discretion to make a *nunc pro tunc* appointment. The Third Circuit Court of Appeals declined to provide a precise and limited definition of the "extraordinary circumstances" standard, and instead listed a number of relevant factors which the bankruptcy court may consider in determining whether extraordinary circumstances are present, including:

> [W]hether the applicant or some other person bore responsibility for applying for approval; whether the applicant was

---

2. 11 U.S.C. § 1107 gives a debtor in possession in a Chapter 11 proceeding all the rights and powers of a trustee. Therefore, an attorney for the Chapter 11 debtor in possession is subject to the same requirement of prior appointment as an attorney chosen by a Chapter 7 or Chapter 11 trustee. *See* 11 U.S.C. § 327.

under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; *and other relevant factors.*

*Id.* at 650 (emphasis added). The Court specifically cited several cases in which *nunc pro tunc* employment was properly approved. In *In re Freehold Music Center,* 49 B.R. 293 (Bankr.D.N.J.1985), *nunc pro tunc* employment of an accounting firm was proper because the firm relied in good faith on the debtors' attorneys, who failed to secure prior approval. In *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768 (Bankr.E.D.Pa.1984), *nunc pro tunc* approval was appropriate because other pressing matters preoccupied counsel, who later filed an application with reasonable promptness. By offering these examples along with a list of permissible factors for consideration, the Third Circuit Court demonstrated that the bankruptcy court does have some latitude in the administration of the *Arkansas* holding. However, the bankruptcy court's decision must be based on its findings of fact. There is insufficient information in the record to support or contradict the bankruptcy court's order denying *nunc pro tunc* employment. Therefore, we will remand this matter for further fact-finding. We will direct the court to hold a hearing in accordance with the *Arkansas* opinion. 798 F.2d at 650.

The bankruptcy court should address the preliminary determinations demanded by the *Arkansas* decision—whether the court would have granted prior approval of LSM & L's employment in light of statutory requirements and whether the services performed by LSM & L were necessary. The court should next determine whether "extraordinary circumstances" exist to justify granting *nunc pro tunc* approval, based on the factors suggested by the Third Circuit Court of Appeals and any other relevant factors, and in light of the cases cited with approval in the *Arkansas* opinion. Among the factors to be considered are: (1) the denial of Mr. Huff's 1984 application for appointment as attorney for the debtor *nunc pro tunc* during the Chapter 7 proceeding; (2) the effect of court orders and correspondance identifying LSM & L, or a member of that firm, as counsel for the debtor; and (3) the extent to which the court was aware or was not aware of the activities undertaken by LSM & L.

The power to appoint *nunc pro tunc* is equitable in nature, *Arkansas,* 798 F.2d at 648; therefore, the bankruptcy court does retain considerable discretion in the application of the power. However, we agree that the "extraordinary circumstances" standard announced in the *Arkansas* opinion requires the party seeking retroactive appointment to justify his delay. Lack of prejudice to the parties is not a sufficient basis for *nunc pro tunc* appointment in the Third Circuit.

The procedural safeguards in the 1978 Bankruptcy Code were designed precisely to change the informal manner in which some bankruptcy proceedings had been conducted in the past. As the *Arkansas* court observed, the bankruptcy judge may be understandably reluctant to deny compensation after substantial services have been rendered. The standard announced in *Arkansas* is designed to discourage professionals from placing the bankruptcy court in this uncomfortable position. Thus, it is more difficult to obtain a retroactive as opposed to a prospective appointment.

An appropriate order will follow.

### ORDER

AND NOW, to-wit, this 14th day of April, 1987, it is hereby ORDERED, ADJUDGED, and DECREED that, upon careful consideration of the motion by Lampl, Sable, Makoroff & Libenson to Make Additional Findings of Fact, or in the Alternative to Alter or Amend Judgment, this matter be and hereby is REMANDED to the Bankruptcy Court for further proceedings consistent with the accompanying Opinion.