## In re ALADDIN PETROLEUM COMPANY, Debtor.

### Bankruptcy No. 5–84–00156–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 14, 1988.

Nelson T. Hensley, Walker, Drexler & Williamson, Houston, Tex., Chapter 11 Trustee.

John Patrick Lowe, Uvalde, Tex., Chapter 7 Trustee.

### OPINION AND ORDER ON DEBTOR'S APPLICATION TO APPOINT AN "EXPERT" NUNC PRO TUNC AND MOTION FOR PAYMENT OF FEES

LEIF M. CLARK, Bankruptcy Judge.

Not long after this case was filed in 1984, Nelson T. Hensley ("Hensley") was appointed the Chapter 11 Trustee. Not long after his initial involvement, he discovered that he needed help operating the Debtor's oil and gas properties, so he asked Woodson Wayne Hardin ("Hardin") to help him out.[1] Hardin, evidently based on his previous experience with bankruptcies, insisted on a retainer, which Hensley paid him out of the estate's oil runs. Hensley never obtained court approval to pay this retainer to Hardin nor did Hardin obtain

---

1. This was not the first time that Hensley and Hardin had worked together nor was it the first time that either had been involved in a bankruptcy. Hardin had been the Chief Operations Officer for Texas General Petroleum, an entity which itself had suffered through an extended Chapter 11 proceeding in Houston, Texas. Hensley had been the court-appointed trustee in the *Triangle Chemicals* bankruptcy case.

court approval to be paid in this matter.[2] For that matter, neither Hensley nor Hardin obtained court authority for Hardin to be retained by the estate. Both Hensley and Hardin explained that the failure to obtain preliminary approval to retain Hardin resulted from a mix-up among the three lawyers then most actively involved in the case, each of whom thought the other was going to take care of the appropriate paperwork and none of whom actually followed through.

The Trustee, on behalf of Mr. Hardin, now requests *nunc pro tunc* authorization for his retention of Mr. Hardin and further requests *ex post facto* approval of Mr. Hardin's receipt of $12,523.50. The Chapter 7 Trustee opposes the Chapter 11 Trustee's request and desires that Mr. Hardin be required to return the money to the Chapter 7 Trustee.

At the hearing, Hardin testified that his efforts enabled the Trustee to bring two of the estate's wells, the Taylor and the Alexander, into compliance with Texas Railroad Commission regulations, allowing them to produce revenue for the estate. He acted as mediator at numerous meetings with the Trustee, the previous operator (Harris) and one of the landowners in an attempt to resolve an extended dispute over one of the leases. Hardin also prepared an informal valuation of the wells for the Trustee, which the Trustee used to conclude that the wells were not worth reworking.

Hardin had no prior professional relationship with the bankruptcy estate or its principals, though he was aware of the principal's business dealings. He was also familiar with the production problems and decline curves associated with so-called Austin Chalk wells such as those owned by the estate. He stated that he is normally retained as a consultant on an hourly fee basis and reported his hourly rates to be $125.00 per hour. Hardin testified that his fee request was reconstructed from contemporaneous time records which he main-

tained in his diary but he was unable to produce either those time records or the diary at the hearing.

In *Matter of Triangle Chemicals, Inc.*, the Fifth Circuit observed that bankruptcy courts should employ a moderately flexible approach to *nunc pro tunc* applications, consistent with the nature of a bankruptcy court as a court of equity. *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir.1983). The court went on to observe, however, that:

> While equitable powers may permit *nunc pro tunc* appointment in rare or exceptional circumstances, we do not intend by our holding to encourage any general nonobservance of the contemplated preemployment court approval. We only hold that, where through oversight the attorney has neglected to obtain such prior approval but has continued to perform services for the debtor/debtor in possession ..., the bankruptcy court retains equitable power in the excercise of its sound discretion, under exceptional circumstances, to grant such approval *nunc pro tunc*, upon proper showing, and to award compensation for all or part of the services performed ... that have subsequently benefited the debtor's estate and, consequently, its creditors.
>
> *Id.*

 This case does not present any exceptional circumstances which would warrant the exercise of the narrow discretion authorized by *Triangle Chemicals*. Mere oversight in filing a timely application for approval of employment is not an extraordinary circumstance which warrants *nunc pro tunc* approval. *Matter of Camp Lightweight*, 76 B.R. 855, 857 (Bankr. M.D. Ga.1987); *Matter of Fleeman*, 73 B.R. 579, 582 (Bankr. M.D.Ga.1987).[3] Both Mr. Hardin and Mr. Hensley have had previous experience with bankruptcy cases and are well familiar with the requirement for advance approval before commencing services. See footnote one, *supra*. Mr. Hensley

---

**2.** Hardin has long since drawn down this retainer. After the retainer was exhausted, Hensley continued to pay Hardin.

**3.** In *Fleeman*, the attorney was denied compensation for services performed prior to his employment even though they allegedly benefited the estate. *Matter of Fleeman*, 73 B.R. at 582.

especially has absolutely no excuse for overlooking this important detail, as he was the Chapter 7 Trustee who *opposed* the requested *nunc pro tunc* relief in *Triangle Chemicals. See Triangle Chemicals, Inc.,* *supra* (the style of the case was Fanelli v. Hensley).

The statutory provisions which require prior approval for the retention of professionals are grounded in sound policy. The legislative history to the Bankruptcy Reform Act of 1978 explained the purpose of the preemployment approval process incorporated into the 1978 Bankruptcy Code:

> ... [The] 1978 Code was designed to eliminate the abuses and detrimental practices that had been found to prevail. Among such practices was the cronyism of the "bankruptcy ring" and attorney control of bankruptcy cases. In fact, the House Report noted that "in practice ... the bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors." H.R. No. 595, 95th Cong.2d Sess. 92, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5963, 6053 (1977).

*In re Fleeman,* 73 B.R. at 582; *see, In re Arkansas Co.,* 798 F.2d 645 (3rd Cir.1986). The Third Circuit in the *Arkansas* case added that:

> We agree instead with the approach of those courts that limit the grant of retroactive approval to cases where prior approval would have been appropriate and the delay in seeking approval was due to hardship beyond the professional's control. While this may seem to be a harsh rule, a more lenient approach would reward laxity by counsel and might encourage circumvention of the statutory requirement.

*In re Arkansas Co.,* 798 F.2d at 649–50.

The application here presented triggers the precise concern aired in *Fleeman* and *Arkansas.* Substantial services have indeed already been rendered from which the estate has certainly realized some benefit. What is more, the money has already been paid to Hardin. Certainly the court is tempted in such a situation to make a pragmatic finding of "no-harm-no-foul," then to enter an order sanctioning the services rendered after the fact. To succumb to such a temptation, however, invites circumvention of Section 327 of the Bankruptcy Code.[4]

> The bankruptcy judge may be understandably reluctant to deny compensation after substantial services have been rendered. The standard announced in *Arkansas* is designed to discourage professionals from placing the bankruptcy court in this uncomfortable position.

*Matter of J.D. Lynnan No. 2, Inc.,* 72 B.R. 411, 414 (Bankr.W.D.Pa.1987). If for no other reason than to discourage professionals from placing the court in the "uncomfortable position" to which the *Lynnan* court makes reference, this application should be denied.

Hensley argues that the compensation received by Hardin should stand because Hardin is not a professional whose retention falls within the ambit of Section 327. This Court disagrees with Hensley's contentions, however.

> Persons who offer services normally performed by professionals, such as appraisers or management consultants, have been designated as professionals, while persons who are involved in the mechanics of a debtor's business have been found not to be within that category of persons. *In re Carolina Sales, Corp.,* 45 B.R. 750 (Bankr.E.D.N.C.1985); *U.S. ex rel. Kraft v. Aetna Casualty & Surety Co.,* 43 B.R. 119 (M.D. Tenn. 1984). Factors considered by the courts involve not only the nature of the services performed, but also the effect of such person's services upon the administration of the bankruptcy case, and how central that role is to the reorganization proceedings. [citations omitted]. If the person seeking to be appointed as a trustee's

---

4. Section 327 provides that:
 > ... the trustee, *with the court's approval,* may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

 11 U.S.C. § 327(a).

agent actually impacts upon the administration of the debtor's estate, that person may be a professional person regardless of the label given to its function. *In re Johns–Manville Corp.*, 60 B.R. 612, 620 (Bankr. S.D.N.Y.1986). *In re Frederick Petroleum Corp.*, 75 B.R. 774, 779 (Bankr. S.D. Ohio 1987) (oil and gas operator retained by the trustee was a professional person). For the reasons set out in *Frederick Petroleum*, Hardin is a professional whose employment is governed by Section 327.

 Based on the foregoing, this Court concludes that Hardin's services were those of a professional person, that Court permission was therefore a prerequisite to his retention, and thus without such permission, he is not entitled to compensation. To the extent Hardin worked for the estate without prior court approval, he did so at his peril. To the extent any professional receives compensation without court approval he or she must repay the estate, unless the court retroactively approves both the retention and the compensation. Regardless of any benefit which the estate may have received, the clear policy of the Bankruptcy Code militates against retroactive approval absent a showing of exceptional circumstances justifying the failure to obtain preemployment authorization. Neither Hensley nor Hardin have demonstrated any such exceptional circumstances in this case.[5] It is therefore

ORDERED, ADJUDGED and DECREED that the application to retain Mr. Hardin *nunc pro tunc* be and the same is hereby DENIED. It is further ORDERED that the application to award fees to Mr. Hardin be and the same is hereby DENIED. It is further ORDERED that Mr. Hardin be and is hereby compelled to forthwith turn over to the Chapter 7 Trustee appointed in this case all sums received by Mr. Hardin during the pendency of this case, including specifically the $12,523.50 acknowledged to have been received and expressly requested by Mr. Hardin. It is

further ORDERED that, because the fees in question were paid by and at the behest of the Chapter 11 Trustee, said Trustee is jointly and severally liable to the estate along with Mr. Hardin for the return of all such sums to the estate, and shall forthwith account for and render to the estate all such sums.

---

**5.** The circumstances would have to be extraordinary indeed in view of Hensley's intimate familiarity with the seminal case on this issue in the Fifth Circuit. *See Matter of Triangle Chemicals, Inc., supra.*