**In re DOWNTOWN INVESTMENT CLUB III, Debtor.**

**Paul B. ANDREW, Appellant,**

**v.**

**Joel COOPERSMITH as General Partner of Downtown Investment Club III, Appellee.**

**BAP No. NC 87–1386–MeMoAs.**

**Bankruptcy No. 3–82–00910.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 30, 1987.

Decided June 28, 1988.

---

Merle C. Meyers, Goldberg, Stinnett & MacDonald, San Francisco, Cal., for appellant.

Jeffrey W. Shopoff, Feldman, Waldman & Kline, San Francisco, Cal., for appellee.

Before MEYERS, MOOREMAN and ASHLAND,* Bankruptcy Judges.

* Upon the death of Bankruptcy Judge Peter M. Elliott, the Clerk assigned Bankruptcy Judge Calvin K. Ashland to the Panel.  Judge Ashland has reviewed the record and has determined that no further argument would be of assistance.

## OPINION

### BY THE COURT:

Andrew appeals from an order denying his motion to vacate the orders modifying the plan, approving the general partner's advances to the partnership as an administrative expense, and approving employment and payment of the general partner's attorney's fees *nunc pro tunc.*

### ISSUES

1. Whether the orders authorizing the debtor to employ counsel on a *nunc pro tunc* basis and approving compensation to the debtor's attorney were improper where counsel represented both the debtor and the general partner and counsel had purportedly represented the debtor since the beginning of the case.

2. Whether the order modifying the plan violated Bankruptcy Code § 1127 where the court had not approved a new disclosure statement upon modification and the court failed to consider the trustee's rights under Bankruptcy Code § 723 when applying the Bankruptcy Code § 1129(a)(7) best interests of creditor's test.

### FACTS

Joel Coopersmith is the general partner of the debtor Downtown Investment Club III, a California limited partnership. The debtor's only asset is a restaurant, Farrell House, located in Petaluma, California. Paul Andrew was the state court receiver prior to the commencement of the Chapter 11 case. Andrew had returned control of the property to Coopersmith.

Before foreclosure proceedings on debtor's property began, on May 12, 1982, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The original Chapter 11 petition and subsequent pleadings show Feldman, Waldman & Kline (Feldman), in the upper left hand corner to be, "Attorneys for Joel Coopersmith, General Partner of Debtor Downtown Investment Club III." However, the Declaration of "... The Attorney for the Debtor" signed by Jeffrey W. Shopoff filed with the court contemporaneously with the original petition shows that Feldman received no money from the debtor, that Coopersmith requested that Feldman perform necessary services and that Coopersmith would pay them, "... less any fees which may be awarded by the court in this proceeding."

On May 11, 1984, Bankruptcy Judge Jack Rainville confirmed a plan of reorganization which provided that the debtor would sell Farrell House. Pursuant to the plan, Farrell House was sold to the Scotts for $488,000, comprised of cash of $153,000 and a four-year nonrecourse note in the amount of $335,000 (Scott Note). The Scott Note was secured by a second deed of trust encumbering Farrell House. The Note was junior to a deed of trust in favor of Embarcadero Mortgage Company (Embarcadero) in the amount of $252,000. Coopersmith personally guaranteed payment of the Embarcadero Note as part of the sale of Farrell House to Scott.

Approximately $293,370 was received from the sale. Administrative claims were paid first. These administrative claims included attorney's fees for Feldman in the amount of $88,500 of which $22,204 were paid, and post-petition real property taxes. The debtor also paid 25% distributions to unsecured creditors who agreed to release their claims.

The Internal Revenue Service (IRS) had an unsecured priority claim involving employment tax obligations that arose during Andrew's receivership. This claim has not been paid. The IRS has asserted its $70,000 claim against both the debtor and Andrew. Other unsecured creditors, including Andrew, were never paid.

According to the plan, creditors were to receive all proceeds and payments from the Scott Note, until fully satisfied. However, following default by the Scotts, the debtor foreclosed and obtained title to Farrell House on September 4, 1985. The Scotts also defaulted on the senior note and deed of trust held by Embarcadero. Embarcadero also began foreclosure proceedings.

In order to avoid Embarcadero's foreclosure, Coopersmith paid Embarcadero $72,219 while he attempted to sell Farrell House. The debtor did not have sufficient funds to prevent the foreclosure without Coopersmith's assistance.

Coopersmith's assertions that his payments to Embarcadero were "advances" are self-serving. The record does not disclose any application by the debtor to borrow money from Coopersmith as required by Bankruptcy Code § 364(b). The circumstances of the guaranty by Coopersmith would not provide him with the protection of California's anti-deficiency legislation.

The debtor made several unsuccessful attempts to resell the property after retaking title. The property was depreciating at approximately $5,000 per month. The debtor then proposed the sale of the property through a modified plan to accommodate Coopersmith's offer of $131,500 plus the assumption of the $252,000 note and first deed of trust in favor of Embarcadero. Coopersmith paid the closing costs and a $5,139.44 IRS claim.

Coopersmith conditioned his offer on the Court's approval of classifying the advances he had previously made as an administrative claim in the amount of approximately $77,000, in spite of his failure to comply with Bankruptcy Code § 364(b). Coopersmith also made his offer conditional on the Court's approval of Feldman's compensation for professional services.

In July, 1986, the debtor submitted a modified plan providing for the sale of the property to Coopersmith. One of the modifications in the proposed plan provided for a new class C–1 note to the IRS for $70,598.87. The settlement provided that the IRS would release its lien and subordinate its claim to administrative claims under the plan. Coopersmith was also released from personal liability for debtor's withholding tax obligations.

At the hearing on modification, no one objected. Andrew was not present because he had received no notice. The plan was then modified to provide for the sale to Coopersmith. Coopersmith purchased the property. The cash payment of $77,219 was then paid back to Coopersmith and $54,281 was paid to Coopersmith's attorneys.

The order modifying the plan provided that the debtor was not discharged of its obligations. Judge Rainville also entered other orders. On July 24, 1986, an order was entered approving payment of Coopersmith's advances as administrative expenses. On August 1, 1986, orders were entered approving the compensation of Feldman and authorizing employment *nunc pro tunc*. The orders had the effect of depleting all of the estate's assets, leaving nothing for unsecured creditors.

Andrew did not receive notice of debtor's motions although many creditors did. On August 31, 1984, Andrew had specifically requested special notice. Furthermore, the court entered the order modifying the plan without specifying a time within which creditors might seek rejections of the modified plan, as required under Bankruptcy Code § 1127(d).

No motions were opposed by any party and all motions were granted. The orders were entered on July 30 and August 1, 1986. Andrew did not receive notice of the entry of those orders.

Andrew became aware of the motions and their approval in November, 1986. On January 16, 1987, Andrew filed a motion to vacate the various orders that modified the plan, approved administrative expenses, authorized retention of Feldman on a *nunc pro tunc* basis and approved fees to that firm. Andrew received a hearing on the motion for March 13, 1987. The motion was denied by Bankruptcy Judge Thomas E. Carlson in an order entered on April 7, 1987, which was accompanied by a memorandum entered by the Court on March 26, 1987.

A timely appeal was filed.

## DISCUSSION

■ Andrew alleges that his due process rights have been violated pursuant to Fed. R.Civ.P. 60(b)(4), incorporated by Bankruptcy Rule 9024. Rule 60(b)(4) authorizes relief from void judgments. A judgment is

void if the court rendered the judgment in a manner inconsistent with due process of law. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir.1985). Wright & Miller, *Federal Practice & Procedure*, § 2862 at 199–200 (1973).

■ Unsecured creditors are entitled to procedural due process. In a judicial proceeding, due process requires that individualized notice be given before rights can be affected. *In re Blumer*, 66 B.R. 109 (9th Cir. BAP 1986), *aff'd*, 826 F.2d 1069 (9th Cir.1987). In both *Blumer* and *Center Wholesale,* the statutory requirement that an order be entered only after "notice and a hearing" provided a basis for a constitutional requirement of procedural due process.

■ In this case, Bankruptcy Code · § 1127(b) also requires notice and a hearing before a modification can be made. Section 1127(b) provides that a modification of a plan becomes the plan "only if circumstances warrant such modification and the court, *after notice and a hearing,* confirms such plan as modified, under § 1129 of this Title." (emphasis added.)

Andrew never received notice of debtor's motion to modify the plan. The modifications had the effect of permitting Coopersmith to be paid in full, exhausting all the assets in the estate, leaving nothing for Andrew or for other unsecured creditors. The modifications clearly affected Andrew. Therefore, Andrew is entitled to relief under Rule 60(b)(4) and all orders entered without notice to Andrew are void. *Center Wholesale,* 759 F.2d at 1448. *See Winhoven v. United States,* 201 F.2d 174, 175 (9th Cir.1952).

Coopersmith argues that we do not need to reach Andrew's due process allegation because the bankruptcy judge permitted Andrew to make his objections, present his arguments and obtain court rulings on them. According to Coopersmith, Andrew appealed the orders entered by the court and any due process violation did not infringe on his rights. We disagree but nevertheless review the rulings on the merits.

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law de novo. *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984), *rev'd on other grounds, United Savings v. Timbers of Inwood Forest,* —— U.S. ——, 108 S.Ct. 626, 98 L. Ed.2d 740 (1988). However, the order granting compensation of attorney's fees should be reviewed for an abuse of discretion. *In re Nucorp Energy,* 764 F.2d 655, 657 (9th Cir.1985). *In re Film Ventures International,* 75 B.R. 250, 253 (9th Cir. BAP 1987).

## I. ATTORNEY'S FEES
### A. *Employment*

Bankruptcy Code § 330 authorizes reasonable compensation to a professional person employed under Bankruptcy Code § 327. Both § 327 and Bankruptcy Rule 2014 explicitly require attorneys to seek the approval of the court before they commence employment for the estate. *In re Kroeger Properties and Development, Inc.,* 57 B.R. 821 (9th Cir. BAP 1987).

■ Feldman did not submit an application for compensation under Bankruptcy Code § 330. In lieu of such an application, the bankruptcy court abused its discretion in granting Feldman's request for employment *nunc pro tunc. Nucorp,* 764 F.2d at 657.

A *nunc pro tunc* order is improperly sought when the employment, due to an attorney's mere negligence or inadvertence, has not yet been court approved. Allowing a judge to limit *nunc pro tunc* orders to extraordinary circumstances will deter attorneys from general nonobservance of § 327. *Kroeger,* 57 B.R. at 822–23. *See In re Crest Mirror & Door Co., Inc.,* 57 B.R. 830, 832 (9th Cir. BAP 1986). A · retroactive authorization order should not be issued where the lateness in seeking court approval of employment is accompanied by inexcusable or unexplained negligence. *In re Crook,* 79 B.R. 475, 479 (9th Cir. BAP 1987). There is no unjust hardship in requiring attorneys to observe the

strict requirements of § 327 because professionals are charged with knowledge of the law. *Kroeger,* 57 B.R. at 823. *In re New England Fish Co.,* 33 B.R. 413, 418 (Bankr.W.Wash.1983).

Here, Feldman could have requested court approval of employment much earlier in the Chapter 11 case. Feldman had represented the debtor from the outset and its inadvertence to obtain court approval does not justify employment *nunc pro tunc* under our decisions in *Crook, Crest Mirror* and *Kroeger.*

The bankruptcy judge allowed the employment *nunc pro tunc* because Andrew failed to show that Feldman's services did not benefit the estate. The burden of proof under Bankruptcy Code § 503(b)(4) to show that a substantial contribution was made is on the party seeking compensation not on the state court appointed receiver. Thus, the bankruptcy judge erred in placing the burden of proof on the state court receiver. Feldman never made any affirmative showing that a substantial contribution had been made.

The bankruptcy judge reasoned that Feldman was entitled to compensation under § 503(b)(4). Section 503(b)(4) authorizes compensation for legal services allowable under § 503(b)(3) that are rendered in making a substantial contribution to a Chapter 11 case. *Matter of Romano,* 52 B.R. 590 (Bankr.M.D.Fla.1985). Otherwise, creditor participation in reorganization might be discouraged. *In re Richton Intern. Corp.,* 15 B.R. 854, 856 (Bankr.S.D.N.Y.1981). However, the instant case is not one where a creditor provided substantial services for the estate and later sought compensation. In this case, Feldman always purported to represent the debtor but never sought approval of his employment. Also, Feldman did not even request compensation under § 503(b)(4).

Surely counsel cannot be excused from compliance with § 327 by use of § 503(b)(4). Feldman looked to the estate for services rendered since the beginning of the case. The record shows that Feldman acted as attorney for the general partner of the debtor throughout this case.

Yet Feldman never bothered to apply for employment and compensation under §§ 327 and 330. Thus, the bankruptcy court abused its discretion in granting Feldman employment *nunc pro tunc. Nucorp,* 764 F.2d at 657.

### B. *Conflict of Interest*

■ As a result of Feldman's failure to apply for employment under § 327, the court was not alerted to the conflict of interest. Section 327 provides in relevant part that:

> ... the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 327 would require that Feldman does not represent an adverse interest and is disinterested. Feldman could not have been employed under § 327 because of its actual conflict of interest as a result of its representation of both the debtor and the general partner Coopersmith.

Feldman, purportedly representing the debtor, also represented Coopersmith, who received payment in full under the confirmed plan and purchased the estate's primary asset. The modifications of the plan benefitted Coopersmith at the expense of all other creditors. We earlier noted the debtor's failure to seek prior approval of Coopersmith's alleged loans for payments to Embarcadero under § 364(b). A clearer conflict, representation of both the lender and the borrower, can hardly be imagined. Thus, actual and irreconcilable conflicts of interest existed.

The court in *In re McKinney Ranch Associates,* 62 B.R. 249, 255 (Bankr.C.D.Cal.1986), found that because of his fiduciary duties, a general partner of a limited partnership will always be a potential target of claims by a limited partnership debtor. We do not believe that it is necessary to lay down such a hard and fast rule. The facts in this case clearly indicate that Feldman's dual representation of both the debt-

or and the partnership created an actual conflict of interest that was impermissible.

## II.  MODIFICATION OF PLAN

### A.  *Disclosure Statement*

■ Bankruptcy Code § 1127(b) requires that a modified plan must comply with Bankruptcy Code § 1129. Section 1129(a)(2) in turn requires that the proponent of the plan complies with the applicable provisions of Title 11.

According to § 1127(c), the proponent of a modification must comply with the disclosure requirements of Bankruptcy Code § 1125 if new acceptances are solicited, regardless of whether the proposed modification will substantially affect the position of any class under the plan.  L. King, *Collier on Bankruptcy,* ¶ 1127.03[2] at 1127–6 (15th ed. 1987).  Section 1125(b) prohibits solicitation after commencement of the case unless a disclosure statement containing adequate information has been transmitted to each class whose acceptance is required.

Section 1125(b) provides in relevant part that:

> An acceptance or rejection of a plan may not be solicited ... unless, at the time of or before such solicitation, there is transmitted to such holder the plan, and a written disclosure statement, *approved, after notice and a hearing, by the court as containing adequate information* (emphasis added).

The debtor never filed a disclosure statement for the modified plan.  Feldman argues that the motion for modification contained all the necessary data for disclosure and therefore suffices as a disclosure statement for the purpose of compliance with § 1125.  We disagree.  A motion for modification cannot be a valid disclosure statement.  Otherwise, no approval after notice and a hearing by the court would be made pursuant to § 1125(b).  The court would not confront the issue of adequate information and there would be no assurance that adequate information had been disclosed. *See* L. King, *Collier on Bankruptcy,* ¶ 1127.03[2] at 1127–7, n. 5 (15th ed. 1987) (court may not confirm plan under § 1129(a)(2) if the court does not determine that the modification was obtained on the basis of adequate information).

The debtor did not comply with § 1125 as required by § 1129(a)(2).  Material plan modifications require a formal disclosure statement and court approval.

### B.  *Section 1129(a)(7) Best Interests of Creditors' Test*

■ Section 1127(b) modification requires compliance with Bankruptcy Code § 1129(a)(7)(A)(ii) which in turn requires that non-accepting creditors would receive at least as much as they would receive in a Chapter 7 liquidation.

The bankruptcy judge modified the order of confirmation so that the debtor would not receive a discharge and then apparently equated state court rights of partnership creditors against Coopersmith to be equivalent to a trustee's rights under Bankruptcy Code § 723(a).  We disagree.  Under § 723(a), the Chapter 7 trustee has a claim against a general partner for any deficiency in partnership assets in meeting partnership obligations.

The bankruptcy judge also erred in finding that to the extent a statute of limitations bars claims against Coopersmith, conversion to Chapter 7 would not revive the claim.  Bankruptcy Code § 108(a) refers to pre-filing causes of action belonging to the debtor and not to a cause of action created by the Bankruptcy Code.  Therefore, Bankruptcy Code § 348, which governs the effect of conversion, does not apply and the trustee's lawsuit under § 723 is not barred.

*Collier on Bankruptcy* indicates that the trustee's claim under § 723(a) is a chose in action to be asserted under Bankruptcy Code § 544(a).  Bankruptcy Code § 546 limits actions under § 544(a) to two years from the appointment of the trustee.  L. King, *Collier on Bankruptcy,* ¶ 723.02 at 723.02–.03 (15th ed. 1987).

Thus, the Bankruptcy Code § 1129(a)(7)(A)(ii) requirement of receipt of at least as much as under Chapter 7 is still viable and the plan should not have been modified.

## CONCLUSION

The order denying the motion to vacate the modification and employment orders is reversed and remanded to the bankruptcy court for further proceedings consistent with this opinion.