**In re B.E.S. CONCRETE PRODUCTS, INC., Debtor.**

**Bankruptcy No. 287–05895–C–11.**
**Motion Control No. WGH–1.**

United States Bankruptcy Court,
E.D. California.

Aug. 8, 1988.

Weintraub, Genshlea, Hardy, Erich & Brown, Sacramento, Cal., for Benjamin and Isabelle Swartz.

Hoge, Fenton, Jones & Appel, Inc., San Jose, Cal., McDonough, Holland & Allen, Sacramento, Cal., for creditor, Atlas Concrete Products of Cal.

Law Offices of Melvyn J. Coben, Sacramento, Cal., for Unsecured Creditor's Committee.

Moore & Bennett, Sacramento, Cal., for debtor in possession, B.E.S. Concrete Products.

Bardwil & Dahl, Sacramento, Cal., for Administrating Claimant, Eng Trucking Rentals.

## ORDER DENYING APPLICATION BY SPECIAL COUNSEL FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AND REVOKING APPOINTMENT AS SPECIAL COUNSEL

CHRISTOPHER M. KLEIN,
Bankruptcy Judge.

The law firm appointed to defend debtor in a lawsuit ("Special Counsel") has applied for interim fees and expenses totaling $55,-287.38. Objections were filed by the largest creditor and by the creditors' committee. A hearing was held on July 14, 1988.

The objections raise three issues. First, whether to permit retroactive payment for the five months before Special Counsel discovered that it had "overlooked" "through excusable neglect and/or clerical error" the requirement for judicial appointment. Second, the effect of apparent ineligibility to be appointed special counsel due to simultaneous representation of other nondebtor codefendants whose positions are adverse to the estate. Finally, the effect of failure to disclose facts pertinent to identify that conflict as required by Bankruptcy Rule 2014.

Analytically, the request falls into two categories: $41,053.01 in fees and expenses incurred before obtaining approval to act as special counsel, which sum is denied, with prejudice; and $14,234.37 after such appointment, which sum is denied, also with prejudice. Finally, the authorization to act as special counsel is revoked, for cause.

1. *Background.*

This chapter 11 case revolves around an asset acquisition gone awry. Atlas Concrete Products, Inc., a California corporation ("Atlas–California"), sold its Hollister, California, concrete box manufacturing plant, Atlas Concrete Products, Inc., an unrelated Nevada corporation ("Atlas–Nevada"), in a secured transaction involving promissory notes. Atlas–California has not

been paid.[1]

Atlas–Nevada and B.E.S. Concrete Products ("B.E.S. Concrete") are sister corporations, the capital stock of which is owned by Benjamin and Isabelle Swartz. When Atlas–California was not paid and discovered that the assets sold to Atlas–Nevada had been transferred to B.E.S. Concrete, and perhaps from there to other entities controlled by Swartz children, a holy war ensued. Atlas–California sued Atlas–Nevada, B.E.S. Concrete, and Benjamin and Isabelle Swartz, the latter three as comakers or guarantors on the note to Atlas–California. The defendants counterclaimed alleging fraud. Special Counsel's efforts in the defense of that lawsuit are the subject of this opinion.

Atlas–California has been an aggressive and unyielding plaintiff. It attached assets of defendants and related entities supposedly controlled by Swartz children. This chapter 11 case ensued. Hard feelings, exacerbated by more than the usual amount of acrimony, prevail.

B.E.S. Concrete filed its voluntary chapter 11 petition on October 16, 1987. This court promptly approved the appointment of the law firm of Borton, Petrini & Conron to represent the debtor in the then-pending case of *Atlas Concrete Products, Inc., a California corporation v. B.E.S. Concrete Products, Benjamin E. Swartz, Isabelle L. Swartz, Atlas Concrete Products, Inc., a Nevada corporation, and Does I–X*, No. 14949, Superior Court, San Benito County, California ("Atlas–California lawsuit"). Benjamin and Isabelle Swartz are sued as guarantors (or comakers) of the putative indebtedness of Atlas–Nevada and B.E.S. Concrete to plaintiff.

On November 2, 1987, the debtor and Benjamin and Isabelle Swartz executed a substitution of attorneys in the Atlas–California lawsuit, replacing Borton, Petrini & Conron with the present Special Counsel. No approval was obtained from this court. Two months later the Atlas–California lawsuit was removed to the United States Bankruptcy Court, Northern District of California, San Jose Division.[2]

On March 18, 1988, the debtor filed its *ex parte* application to employ Special Counsel "from and after October 28, 1987" to which was attached a declaration purporting to comply with Bankruptcy Rule 2014(a). Both the application and declaration asserted that Special Counsel did not represent an interest adverse to the estate in the matter with respect to which it was to be employed. Neither revealed the existence of multiple defendants or of adverse claims among them.[3]

On March 21, 1988, I authorized the requested employment of Special Counsel but declined to make the appointment retroactive.

On June 21, 1987, Special Counsel filed this motion, seeking $52,827.50 in fees and $2,459.88 in expenses for the period October 23, 1987—May 31, 1988. The fees and expenses for the period before approval of appointment as special counsel are $41,053.01 ($39,615.50 fees; $1,437.51 ex-

---

1. This recitation of the background is based upon the files in the case and the representations of counsel during the two and one-half-hour hearing on July 14, 1988.

2. Adversary No. 88–0005. That court recently ordered the matter transferred to this court. It has not yet arrived.

3. Special Counsel's declaration indicated that the debtor was the sole defendant:

   3. To the best of my knowledge [Special Counsel] has no connection with the Debtor, or any other party in interest, except that [Special Counsel] has agreed to represent the Debtor in the San Benito County Superior Court litigation entitled *Atlas Concrete Products, Inc. v. B.E.S. Concrete Products*, case number 14949, now removed to the United States Bankruptcy Court, Northern District of California, San Jose Division.

   4. To the best of my knowledge, [Special Counsel] represents no interest adverse to the above Debtor or creditors in matters for which it is to be engaged which would preclude it from representing the Debtor.

   The Application, signed by Benjamin Swartz in his capacity as president of the Debtor corporation, was no more revealing. Although Swartz included the words "et al." after B.E.S. Concrete Products in the name of the case, that adds nothing material. Doe pleading is so prevalent in California state courts that nobody is placed on notice as to additional party defendants by an "et al."

penses). The remaining $14,234.37 ($13,212.00 fees; $1,022.37 expenses) are for the period after appointment. Exhibit A attached to the motion is a detailed accounting of Special Counsel's services and expenses. Atlas–California has objected. The creditors' committee has objected.

2. *Ninth Circuit Standard for Retroactive Award of Fees for Services as Special Counsel.*

■ The Ninth Circuit permits a retroactive award of fees for services rendered without court approval only in exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval pursuant to 11 U.S.C. § 327 and Bankruptcy Rule 2014 and that he or she has benefitted the bankrupt estate in some significant manner. *In re THC Financial Corp.*, 837 F.2d 389 (9th Cir.1988) (*"THC Financial"*); *In re Laurent Watch Co., Inc.*, 539 F.2d 1231 (9th Cir.1976). The burden of proof is on the applicant to demonstrate the satisfactory explanation and the significant benefit to the estate. The ultimate decision is within the discretion of the court.

■ Mere negligence is not sufficient to establish the requisite exceptional circumstances. *In re Downtown Investment Club III*, 89 B.R. 59, 63 (9th Cir. BAP 1988); *In re Kroeger Properties & Dev., Inc.*, 57 B.R. 821 (9th Cir. BAP 1986). It is no hardship to require that attorneys observe the strict requirements of 11 U.S.C. § 327 since lawyers are charged with knowledge of the law. *In re Kroeger*, 57 B.R. at 823; *In re Downtown Investment Club III*, 89 B.R. at 63–64.

The exceptional circumstances that the Ninth Circuit requires are not lightly to be divined lest it be too easy to circumvent the statutory requirement of prior approval. It is in that context that one must take the Ninth Circuit BAP's requirement that the court conduct the type of equitable balancing analysis found in *In re Twinton*

*Properties Partnership*, 27 B.R. 817, 819–20 (M.D.Tenn.1983), or in *In re Freehold Music Center, Inc.*, 49 B.R. 293, 296 (D.N.J.1985). *In re Kroeger*, 57 B.R. at 823; *In re Crest Mirror & Door Co.*, 57 B.R. 830 (9th Cir. BAP 1986).

The Ninth Circuit, subsequent to those BAP cases, decided in *THC Financial* that the key factors are (1) a satisfactory explanation for the failure to receive prior judicial approval and (2) a benefit to the bankrupt estate in some *significant* manner. It agreed generally with the Fifth Circuit's decision in *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir.1983). It cited *In re Twinton Properties* for the proposition that the key factors are applicable. Significantly, it also noted parenthetically that the *In re Twinton Properties* court would look to other factors as well. *In re THC Financial*, 837 F.2d at 392.

The Ninth Circuit's *THC Financial* decision and the manner in which it dealt with *In re Twinton Properties* have an important impact narrowing the factors, to satisfactory explanation and significant benefit, that are to be taken into account when a court in this circuit decides whether there are exceptional circumstances. This diminishes or eliminates the importance of the other factors cited in *In re Twinton Properties*.[4] The net effect is to increase the role of such policies as deterrence and to emphasize that exceptional means exceptional. Since *THC Financial* establishes the law of this circuit, the earlier Ninth Circuit BAP references to *In re Twinton Properties* factors must be read in that context.

Indeed, the first post–*THC Financial* decision by the BAP on an appointment of counsel issue emphasizes the importance of deterrence and avoidance of general nonobservance of section 327. *In re Downtown Investment Club III*, 89 B.R. at 63. Although that case dealt with an attempted end-run by way of 11 U.S.C. § 503, the panel expressly relied upon its prior ap-

---

**4.** Those factors are: services under contract; consent of party for whom work performed; notice and lack of opposition; eligible under 11 U.S.C. § 327; quality performance; no preju-

dice; and no pattern of inattention or negligence by counsel in seeking judicial approval for employment.

pointment of counsel decisions and emphasized the difficult hurdle that a late applicant must surmount. Other courts agree with this approach. *See, e.g., In re Arkansas Co.*, 798 F.2d 645, 649–50 (3rd Cir.1986); *In re Aladdin Petroleum Co.*, 85 B.R. 738 (W.D.Tex.1988).

As suggested above, deterrence is another reason for applying strict rules to implement 11 U.S.C. § 327. *In re Downtown Investment Club III*, 89 B.R. at 63; *In re Aladdin Petroleum Co.*, 85 B.R. at 740 ("If for no other reason than to discourage professionals from placing the court in the 'uncomfortable position' to which the *Lynnan* court makes reference, this application should be denied."). All of these considerations coalesce to make retroactive appointments and retroactive compensation difficult to establish.

### 3. Amount of Fee Requested Makes No Difference.

Whether the amount of the fee requested should be a factor for consideration poses a beguiling problem.

It is all too tempting to view a large fee ($55,287 in this instance) that is imperiled by failure to comply with the rules as more deserving of protection and sympathy. At first blush, something seems unfair, perhaps even confiscatory, about depriving a professional of a large fee after a substantial amount of work has been devoted to an effort that conferred some benefit to the estate. This may lead to a tendency to view more money as more of an "exceptional circumstance" and to view routine benefit as "some significant" benefit.

If courts were to succumb to the temptation to be more lenient in the face of substantial fees, then counsel who find themselves in an ambiguous situation because of inadvertence or neglect might have an incentive to wait, do more work, let the fees run up to a more impressive sum, and then throw themselves on the mercy of the court. Instead of inviting such circumven-

tion of 11 U.S.C. § 327, the incentives ought to be such that the professional takes great care to obtain the requisite approval *ab initio* and, in the event of overlooking the requirement of court approval, promptly takes heroic steps to obtain approval so as to minimize the loss.

One rule unambiguously creates the appropriate incentive: no compensation for services performed before applying for court approval.[5] There is no reason in principle or in policy why findings of "exceptional circumstances," "satisfactory explanation," and "significant benefit" ought to be influenced more favorably by a $100,000 fee than by a $1,000 fee. If anything, the passage of time harms the professional's case for compensation because longer periods of unapproved work are not easily explained and because the benefit that is significant in light of a $1,000 fee may be viewed as less significant in light of a $100,000 fee.

Nevertheless, a judge is necessarily placed in an "uncomfortable" position when confronted with requests for compensation after substantial services have been rendered. *In re J.D. Lynnan No. 2, Inc.*, 72 B.R. 411, 414 (W.D.Pa.1987); *In re Aladdin Petroleum Co.*, 85 B.R. 738 (W.D. Tex.1988). Although such discomfort is to be discouraged, the discomfort does not make circumstances more exceptional, explanations more satisfactory, or benefit more significant.

Thus, the size of the fee requested should play no role helpful to an applicant. It should be no more than a neutral factor.

### 4. Retroactive Compensation is Inappropriate in this Case.

■ Counsel has conceded that the four and one-half month delay in applying for appointment as counsel was due to "excusable neglect and/or clerical error" and that it was "overlooked." Memorandum Of Points And Authorities In Reply To Opposition To The Motion of [Special Counsel] For

---

**5.** Common sense dictates a *de minimis* exception where services are performed on essentially an emergency basis at the beginning of a bankruptcy case and where the required application is made promptly thereafter. Such situations, however, would only involve relatively short "gap" periods and small sums.

Compensation And Reimbursement Of Expenses, at 8 ("Reply").

The sole explanation proffered for overlooking the requirement of court approval of employment is that there was "a hectic period following [Special Counsel's] entry" into the matter. Reply at 8. And that "there were numerous matters which had to be dealt with." Reply at 5. That is not a satisfactory explanation.

Not only was the matter overlooked, but when it was called to the attention of the firm, no particular urgency was attached to the situation. The applicant's time records reflect that the omission to obtain appointment as special counsel was identified on February 25, 1988, and that it took nearly three weeks to prepare and file the application.[6]

■ The benefits to the estate that Special Counsel alleges are more routine than significant. One such alleged benefit is an extension of time in which to file schedules in this court. That is of uncertain value and was not a duty appropriate for Special Counsel.

Another alleged benefit is that Special Counsel obtained the lifting of various writs of attachment that Atlas–California had obtained against assets of B.E.S. Concrete and against various related entities and persons. It is alleged that those attachments brought the business of B.E.S. Concrete to a virtual standstill. Reply at 3 and 5. Some of the attachments were against nondebtors and occurred after B.E.S. Concrete resumed operations. Those other persons received the primary benefit, yet none of the bill is allocated to them. Since various Bankruptcy Code provisions protect the estate from overeager creditors, whatever success may have directly benefited the debtor seems neither extraordinary nor significant. Moreover,

Special Counsel has made no record to support the significance of the benefit.

It also is suggested that the complexity of the lawsuit necessitates a finding that the services rendered therein constituted a significant benefit. The lawsuit, however, is not unusually complex. The gravamen of the complaint, as described at the hearing, is a claim that the Hollister facility was, at the behest of Mr. and Mrs. Swartz, looted and transferred first from Atlas–Nevada to the debtor and then to entities controlled by Swartz children. This amounts to a garden-variety claim of transfer of assets in violation of security agreement, not for reasonably equivalent value, and not to bona fide purchasers. In addition, there are claims against those who are alleged to be primarily and secondarily liable on the notes.[7] Finally, the counterclaim for fraud does not seem complex.

As suggested above, Special Counsel's efforts appear to be benefiting nondebtors at least as much as the estate. Counsel conceded that Mr. and Mrs. Swartz executed personal guarantees (or were comakers) and have been sued in such capacity by Atlas–California. Special Counsel's time records are replete with contacts with Mr. and Mrs. Swartz in contexts that suggest their personal and family interests were being defended. The estate, however, is being asked to pay the entire bill including portions allocable to other clients.

In short, the exceptional circumstances required by the Ninth Circuit in *In re THC Financial Corp.*, 837 F.2d at 389–92, have not been demonstrated. There has been no satisfactory explanation of the failure to request timely appointment as special counsel. There has been demonstrated no unambiguously significant benefit to the estate. Assuming that the other factors elaborated in *In re Twinton Properties* and endorsed by the Ninth Circuit BAP in

---

6. The "Client Detailed Time & Expenses Report" attached to the Application includes ten separate entries between February 25, 1988, and March 16, 1988, relating to appointment as special counsel. The application was initially prepared on February 29, 1988.

7. There may be some complicated legal issues on the horizon. For example, the relative priority of those claiming security interests may come into issue. *Cf., e.g., Bank of the West v. Commercial Credit Fin. Services, Inc.*, 852 F.2d 1162 (9th Cir.1988). They have not yet, however, been the subject of significant legal efforts to date.

*In re Kroeger*[8] continue to be applicable in the wake of *THC Financial Corp.*, upon balancing the equities there still is no reason to award fees retroactively.[9] Accordingly, I will not exercise my discretion to permit a retroactive award of $41,053.01 in fees and expenses from the estate.[10]

### 5. Fees as Special Counsel: Conflict of Interest.

■ The $14,234.37 in fees and expenses attributable to the period after the appointment as special counsel are not subject to the exceptional circumstances doctrine of *THC Financial* and are eligible for consideration for payment from the estate under the rules generally applicable to fee requests. The hourly rates, ranging upward from $95.00/hour for mid-level associates, are reasonable. Three obstacles stand in the way: failure to segregate or allocate among clients; apparent conflict of interest; and less than candid compliance with Bankruptcy Rule 2014.

### A. Allocation of Services.

It is undisputed that Special Counsel represents all four defendants (plus Does I–X) in the Atlas–California lawsuit. Those other defendants are Atlas–Nevada (a sister corporation) and Mr. and Mrs. Swartz. Atlas–Nevada originally purchased the assets from plaintiff and transferred them to B.E.S. Concrete. Mr. and Mrs. Swartz are defendants in their capacity as co-signers or guarantors on the original note.

There is no allocation of the bill among the various clients. Some services were rendered for the ultimate benefit of persons other than the debtor. Since it is impossible to determine on this record what portion, if any, of the fees and expenses are properly attributable to the debtor, the request should be denied for that reason alone.

### B. Conflict of Interest Offending 11 U.S.C. § 327(e).

A conflict of interest problem also flows from the multiple representation situation discussed above. The focus is primarily upon Mr. and Mrs. Swartz in their capacity as cosigners or guarantors on the corporate debt of Atlas–Nevada and B.E.S. Concrete. The problem is that an attorney is eligible for appointment as special counsel under 11 U.S.C. § 327(e), only if such attorney does not represent "any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."

A guarantor on a corporate debt has a natural conflict with the principal and with other guarantors. To be sure, the interests of principal and guarantor coalesce so long as the issue is whether anyone is liable on the claim. They become adverse upon the appearance of a genuine question about who is going to pay. Such an issue, *a fortiori*, exists whenever a key player is in bankruptcy.

---

8. 57 B.R. 821 (Bankr. 9th Cir.1986). *See also, In re Crook*, 79 B.R. 475, 477–78 (Bankr. 9th Cir. 1987); *In re Crest Mirror & Door*, 57 B.R. 830 (Bankr. 9th Cir.1986).

9. 27 B.R. 817, 819–20 (Bankr. M.D.Tenn.1983). At least five other *In re Twinton Properties* factors work against Special Counsel. There is opposition from the creditors' committee and from Atlas–California. The conflict problem discussed below affects eligibility under 11 U.S.C. § 327(e). The quality of performance has been negatively affected by excessive invective. Payment of fees properly chargeable to non-debtor defendants is prejudicial to the estate. There was prolonged inattention to seeking judicial approval of employment after the oversight was discovered.

10. My determination is limited to the question of whether the estate is authorized to pay the bill. The law firm may be paid by its other clients, Benjamin and Isabelle Swartz, or by other entities. Nor, as pointed out by the Ninth Circuit BAP, does it necessarily preclude the debtor from paying after it emerges from chapter 11:

The denial of a *nunc pro tunc* order does not mean that [counsel] cannot be compensated by his client for work done prior to his appointment, when the debtor is revested with the surplus assets after the estate emerges from bankruptcy. The Panel notes that the Code now encourages the payment of any obligation after a discharge has been obtained. 11 U.S.C. § 524(f).

*In re Kroeger Properties & Dev., Inc.*, 57 B.R. 821, 823 n. 3 (Bankr. 9th Cir.1986).

Neither Benjamin nor Isabelle Swartz are debtors in a bankruptcy case. If a money judgment were enforced against them, they would become creditors of the estate. That would invite litigation of subordination issues under 11 U.S.C. § 510. Indeed, the parties' aggressive postures virtually assure that a subordination claim will be made. Thus, this situation is pregnant with conflict among the defendants.

In the context of a chapter 11 proceeding, the problem is exacerbated. Creditors with valid claims generally wind up with some ownership interest in the reorganized entity. If a creditor succeeds in recovering a part of the claim from a guarantor and winds up owning part of the reorganized entity, and if the guarantor recovers from the debtor, then the net effect is that the creditor has paid himself. Such a result is barred by 11 U.S.C. § 509(c), mandating automatic subordination until the original creditor's claim is paid in full.

Special Counsel, in effect, conceded the existence of the conflict during the hearing. It agreed that Atlas–Nevada was a corporate shell and that all the assets had been transferred to B.E.S. Concrete at the behest of Mr. and Mrs. Swartz. Thus, it insisted, the objections based upon the various positions of the defendants were "red herrings" because "it is all B.E.S.'s money."

When asked why B.E.S. Concrete necessarily would be liable for a judgment against Mr. and Mrs. Swartz, counsel asserted that they would be liable as "directors" and would be entitled to indemnification. Assuming that director liability is actually an issue, the law on corporate indemnification of directors is not so automatic or so simple. A bankruptcy further clouds indemnification rights. At a minimum, on the uncontested facts, there probably would be a subordination dispute under 11 U.S.C. § 510.

Although Special Counsel's reference to director liability rather than liability as guarantors or comakers may have been inadvertent, the picture is the same. Mr. and Mrs. Swartz want the debtor, and the debtor's creditors, to pay their legal bills and pay any liability that may be visited upon them. That position is adverse to B.E.S. Concrete.

A single law firm is in a delicate conflict of interest position when simultaneously representing parties adverse to each other. Although the parties can waive the conflict upon appropriate disclosures, the waiver is more difficult to obtain in a chapter 11 case because the debtor in possession stands in a fiduciary capacity that constrains its ability to make such a waiver.

■ A law firm in a conflict of interest position must choose between clients. In this case 11 U.S.C. § 327(e) leaves only one choice: the firm may choose to continue to represent parties other than the debtor. Since Special Counsel is statutorily ineligible to serve as special counsel in the Atlas–California lawsuit, the March 21, 1988, order authorizing such representation is revoked.[11]

### C. Defective Disclosure under Bankruptcy Rule 2014.

Even if the various codefendants were not actually adverse, Special Counsel violated Bankruptcy Rule 2014(a) by not disclosing connections with parties in interest.[12]

That rule requires disclosure under penalty of perjury of facts relevant to the court's determination of eligibility under 11 U.S.C. § 327:

> The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

---

**11.** While I normally would stay my hand briefly in order to permit the parties to bring to my attention additional matters that may affect the decision, the problem relating to Bankruptcy Rule 2014(a) causes me to give my order immediate effect.

**12.** Bankruptcy Rule 2014 applies to a debtor in possession by virtue of Bankruptcy Rule 9001(10).

The burden is on the person making the statement to come forward with facts pertinent to eligibility under 11 U.S.C. § 327.

The relevant facts in this instance necessarily included that the attorney to be employed to represent the debtor also represented three (or more) other defendants, two of whom would be looking to the debtor for reimbursement.

Disclosure of "connections" has been required since the days of General Order 44 under the Bankruptcy Act of 1898. In the Ninth Circuit it is settled that it is the duty of counsel to disclose the connections:

> It was his duty to reveal all of his connections with the bankrupt, the creditor or any other parties in interest. Had he made the disclosures then it would have devolved upon the court to determine whether conflicts existed. General Order 44 does not give the attorney the right to withhold information because it is not apparent to him that there is a conflict. If he does not disclose and if his representation turns out to be adverse, then the punitive provisions [denial of fees] of General Order 44 may be invoked.

*In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302, 1304 (9th Cir.1969) (footnote omitted). In that case, the Ninth Circuit expressly relied upon *In re Rogers–Pyatt Shellac Co.*, 51 F.2d 988 (2d Cir.1931), a decision that fleshes out the concept and merits scrutiny.

The Second Circuit held that an attorney's failure to disclose a potential conflict justified denial of compensation under a local rule that was a precursor of General Order 44:

> Attorneys who seek appointment ... owe a duty of complete disclosure of all facts bearing upon their eligibility for such appointment. If that duty is neglected, however innocently, surely they should stand no better than if it had been performed.... If the rule is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally.

51 F.2d at 992. Fifty-seven years later the analysis remains squarely on target.

■ The ultimate determination of whether there is a disqualifying conflict and whether the representation is in the best interest of the estate lines within the discretion of the court. That exercise of discretion must be independent and informed. While there may be room for debate at the fringe about what "connections" need be disclosed, there is no room for doubt that simultaneous representation of adverse codefendants is virtually the paradigm case of a connection that might make a difference in a decision to appoint special counsel. Failure to disclose in this instance frustrated proper exercise of the court's statutory duty to rule on the propriety of employment.

The declaration that was filed in support of the application for employment does not refer to the multiple representation and does not indicate that there is more than one defendant. The application signed by Benjamin Swartz was similarly defective except that it listed the defendants as "B.E.S. Concrete, *et al.*" That does not, in light of the prevalence of Doe pleading in California courts, alert one to the existence of other real defendants.

Defective disclosure is not a minor matter. It goes to the heart of the integrity of the bankruptcy system, of counsel, and of the courts. One of the fundamental problems that the Congress was seeking to root out when enacting the Bankruptcy Code in 1978 was the disrepute that resulted from the appearance that the system was unfair. H.R. Rep. 95–595, 95th Cong., 1st Sess., at 88–99 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6049, 6060. The Congress did not mince words: "The law must be changed to afford bankruptcy litigants the fair and impartial justice to which all other litigants in the federal courts are entitled." *Id.* at 91. Appearances count. Even conflicts more theoretical than real will be scrutinized.

■ The disclosures must appear in the application and declaration required by Bankruptcy Rule 2014(a). It is not sufficient that the information might be mined from petitions, schedules, section 341 meeting testimony, or other sources. *In re Haldeman Pipe &·Supply Co.*, 417 F.2d at

1304; *In re Automend,* 85 B.R. 173, 178 (Bankr.N.D.Ga.1988); *In re Flying E Ranch,* 81 B.R. 633, 637 (Bankr.D.Colo. 1988).

The burden is on the person to be employed to come forward and make full, candid, and complete disclosure. *In re Roberts,* 75 B.R. 402, 411–12 (D.Utah 1987) (en banc), *aff'g,* 46 B.R. 815, 839 (Bankr.D. Utah 1985); *In re Coastal Equities, Inc.,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984); *In re B.E.T. Genetics, Inc.,* 35 B.R. 269, 273 (Bankr.E.D.Cal.1983). Negligent omissions do not vitiate the failure to disclose. *In re Michigan General Corp.,* 78 B.R. 479, 482 (Bankr.N.D.Tex.1987); *In re Coastal Equities, Inc.,* 39 B.R. at 308.

A court has discretion to deny fees for failure to comply with the disclosure requirements. *See, e.g., In re Haldeman Pipe & Supply Co.,* 417 F.2d at 1305 (General Order 44); *In re Coastal Equities, Inc.,* 39 B.R. at 308 (former Bankruptcy Rule 215); *In re Sixth Ave. Car Care Center,* 81 B.R. 628 (Bankr.D.Colo.1988) (Bankruptcy Rule 2014).

This is a situation that was not a close case on the question of disclosure. Regardless of whether there is an actual conflict, the existence of an arguable conflict must be fully disclosed in plain and public view, if only to be explained away. Under the circumstances of this case, denial of fees from the estate is appropriate. As noted above, a denial of fees from the estate does not preclude Special Counsel from recovering the fees from its other clients in the lawsuit. Thus, there is the possibility that the firm will not suffer severe economic harm. Moreover, a portion of the fees requested, perhaps most of them, are properly chargeable to nondebtor clients.

The failure to disclose caused actual harm. It caused me to permit, erroneously, a representation that was not in the best interest of the estate (as well as constituting an impermissible conflict). It is evident that the parties on each side have been intractable and belligerent with the concomitant effect of increasing the amount of legal work required. The time sheets submitted in support of the fee application reveal that Mr. and Mrs. Swartz were making the decisions and directing the litigation on behalf of themselves and of the debtor. If the estate had been represented by counsel who owed primary allegiance to the estate, such counsel might have had a leavening effect that would have consumed far less effort.

In addition to not permitting the estate to pay the fees and revoking the appointment as special counsel, I have also considered and rejected the possibility of imposing sanctions pursuant to Bankruptcy Rule 9011 for the defective disclosure. The best use of such sanctions is to require payment of attorney's fees to the innocent party. The hardball performance by Atlas–California's San Jose counsel has contributed to the invective and confusion to a degree that makes them an undeserving beneficiary of that rule. In another case, however, I would not hesitate to impose substantial economic sanctions for materially incomplete disclosure.

Strict adherence to the precepts of 11 U.S.C. § 327 and Bankruptcy Rule 2014 are essential. Counsel who appear in this court need to be on notice that these procedural matters are very important, and that this court is determined that bankruptcy litigants receive, both in fact and in appearance, the fair and impartial justice to which all litigants in the federal courts are entitled.

Accordingly, I am exercising my discretion under all the facts and circumstances and after hearing to deny fees for failure to comply with the disclosure requirements of Bankruptcy Rule 2014.

In summary, Special Counsel's application for retroactive award of compensation is denied because Special Counsel has failed to carry its burden to demonstrate the exceptional circumstances required in this circuit for such compensation. Compensation for services rendered after appointment as Special Counsel is denied for lack of evidence (failure to allocate fees among clients) and as a discretionary sanction for failing to make required disclo-

sures under Bankruptcy Rule 2014. And the appointment as Special Counsel is revoked because the appointment was not in the best interest of the estate and because Special Counsel represents an interest adverse to the estate with respect to the matter on which such attorney was employed.